[PHILADELPHIA, FEBRUARY 4, 1833.]

COATES *against* ROBERTS.

#### IN ERROR.

Of interpleading generally, and particularly, as it is practiced in *Pennsylvania.*

The recovery of a debt, in a *scire facias* against the garnishee, upon a judgment in a foreign attachment, is a bar to a recovery of the same debt from the garnishee by a person who took defence on the trial of the *scire facias;* provided such recovery was not the result of misrepresentation, fraud or neglect, on the part of the garnishee, or of collusion between him and the plaintiff in the attachment.

If counsel submit to the Court several distinct questions of law, with a request that the jury may be instructed on them, it is not error to answer them collectively, provided they all relate to the same matter and are answered fairly and fully.

WRIT of error to the Court of Common Pleas of *Chester* county, in an action of *assumpsit* in which the plaintiff in error, *Moses Coates,* was plaintiff, and the defendant in error, *Robert Roberts,* defendant, upon the acceptance of an order in the nature of an inland bill of exchange.

The declaration contained four counts.

The *first,* which was not relied on, was on the acceptance of an order dated 5th month 6th, 1820, drawn by *Isaac Coates.* in favour of *Moses Coates,* for three hundred and fifty-six dollars, and thirty-two cents.

The *second* count was for money had and received.

The *third* was on the said order as an inland bill of exchange.

The *fourth* was a special count, setting forth the material facts of the case, as follows:

"And whereas, also heretofore, to wit, in the year 1817, the defendant became the purchaser of certain real estate of one *Moses Coates,* deceased, father of a certain *Isaac Coates,* by which a certain part of the purchase money was to remain in the hands of said defendant, the interest thereof to be paid annually to the widow of the said *Moses Coates,* deceased, during her natural life, and at her decease, the same to be divided amongst the children of the said *Moses Coates,* of which a certain part to wit, the sum of three hundred and fifty-six dollars, and thirty-two cents, was payable to the said *Isaac Coates,* one of said children, at the death of said widow. And whereas, afterwards, to wit, on the 6th of *May,* 1820, the defendant

(Coates *v.* Roberts.)

being still the owner and possessor of the same real estate, and the said *Isaac Coates* being indebted to the plaintiff in a large sum of money, in payment thereof gave the said plaintiff his certain order in the nature of an inland bill of exchange upon the said defendant as follows, to wit:

"Friend *Robert Roberts*—Please to pay *Moses Coates*, at the death of my mother, three hundred and fifty-six dollars, and thirty-two cents, it being my share of her thirds that is left in thy hands.

5th month, 6th, 1820.                              ISAAC COATES."

"Which said order afterwards, and after the death of said widow, the mother of the said *Isaac Coates*, to wit, on the 30th *October*, 1824, was presented to the defendant for acceptance, and the said defendant was then and there informed that the same order had been given in payment of a debt due from the said *Isaac Coates* to the plaintiff, whereupon, the said defendant accepted the same, and then and there undertook and faithfully promised to pay the said sum of three hundred and fifty-six dollars, and thirty-two cents, to him the said *Moses Coates*, when he should become satisfied, or lawfully informed of the death of the said widow; and the plaintiff in fact says, that the said defendant afterwards, to wit, on the day and year last aforesaid, at the county aforesaid, was satisfied or lawfully informed of the death of the said widow, by means whereof, the defendant became liable," &c.

The defendant pleaded *non assumpsit*, and payment, with leave, &c., and also a special plea, setting forth in substance, that a certain *Rebecca Jones*, at *January* Term, 1824, of the Court of Common Pleas of *Chester* county, issued a writ of foreign attachment in debt for eight hundred dollars against the said *Isaac Coates*, and summoned the defendant, *Robert Roberts* as garnishee: That on the 1st *August*, 1825, the plaintiff in the attachment obtained judgment: That on the 17th *January*, 1828, she issued a *scire facias* upon the judgment against *Roberts* the garnishee, returnable to *January* Term of that year, and on the 8th *November*, 1829, recovered judgment against the garnishee for the sum of three hundred and fifty-six dollars, and thirty-two cents, with costs: That upon the trial of the issues in the *scire facias*, *Moses Coates*, the present plaintiff, appeared in court and took defence; and the plea avers that the moneys now demanded in the declaration of the plaintiff in this cause, are the same moneys which were recovered from him by *Rebecca Jones*.

To this plea the plaintiff replied, that the proceeding by foreign attachment pleaded by the defendant was commenced at the instance of the defendant, *Roberts*, after he had undertaken and become liable to pay to the plaintiff, *Coates*, the money in the declaration mentioned, and by collusion between him, *Roberts*, and the plaintiff in the foreign attachment, and that the judgment therein obtained, was obtained by the collusion, misrepresentation, and neglect of him the said *Roberts*; and the plaintiff denied that he appeared in court and took defence as set forth in the plea.

(Coates *v.* Roberts.)

The defendant rejoined, "no collusion, misrepresentation, and neglect of him the said *Robert Roberts*," and issue.

The material facts proved on the trial in the court below, as they appeared from the paper book furnished to the reporter, were these: In the year 1817, the defendant, *Roberts,* purchased certain real estate subject to the payment of a sum of money, at the death of the widow of *Moses Coates,* deceased, to certain of his heirs, of which the sum of three hundred and fifty-six dollars, and thirty-two cents, was payable to *Isaac Coates,* the brother of the plaintiff. In the year 1820, *Isaac Coates,* being indebted to the plaintiff, and also wishing to raise funds to enable him to remove to the western country, gave the order declared upon, upon which a further sum was advanced to him by the plaintiff. In the year 1824, intelligence of the death of the widow *Coates,* (who had also removed to the western country,) was received, when *Moses Coates,* the plaintiff, called upon *Roberts,* the defendant, with the order, and stated to him the circumstances under which it had been given. After having read it, *Roberts* said, in the presence of a witness, "as soon as I become satisfied of the widow's death I will pay it." The letter containing the information of her death was then shewn to him, and he said he was satisfied and would pay the money. Besides this proof of the acceptance of the order, the same fact was established by two affidavits of *Roberts* himself; one made on an application to open the judgment by default which has been suffered in the *scire facias* upon the judgment in the foreign attachment pleaded, and the other in answer to inrogatories in another foreign attachment.

Shortly after the interview at which the letter announcing the death of the widow *Coates* was exhibited to the defendant, he called on a neighbour, *George Fisler,* and suggested to him that he might go to *Rebecca Jones* and get her to attach the money in his hands, as by doing so, she might secure her debt against *Isaac Coates,* stating at the same time, that *Moses Coates* had called on him with an order from *Isaac,* which he had refused to accept. *Fisler,* (as he testified on his examination,) went to *Rebecca Jones* at the instance of *Roberts,* got the bond from *Isaac Coates* to her, took it to an attorney and had a writ of foreign attachment issued. When the sheriff came to attach the money in *Roberts'* hands, he asked him, in *Fislers'* presence, how much money of *Isaac Coates* he had in his hands; to which *Roberts* replied, "about four hundred dollars."

Judgment was taken in the foreign attachment, and a *scire facias* issued against *Roberts,* the garnishee, in which judgment went by default. A year afterwards *Roberts* applied to the court to open this judgment, founding his application on an affidavit, that he had accepted *Isaac Coates'* order in favor of *Moses Coates,* and become liable to pay him the money and that he had spoken to Mr. *Duer,* (an attorney,) to appear for him, who had neglected to do so. The plaintiff's counsel consenting that the application should be considered as hav-

ing been made at the next term after the judgment was entered, the court opened it.

*Moses Coates* did all he could to aid *Roberts* in the defence, not being aware of any bad faith on his part.   But on the trial of the *scire facias*, *Fisler* proved that *Roberts* procured the attachment to be issued; that he had told him he had not accepted the order; and that he had also told the sheriff in his, *Fisler's*, presence, that he had about four hundred dollas in his hands, of *Isaac Coates'* money, when the attachment was served.

This evidence of the declarations of *Roberts*, was admitted after an objection taken, which the court overruled.

On the trial of this cause in the court below, the plaintiff, in support of his replication, proved by *Fisler*, that at the trial of the *scire facias* on the judgment in the foreign attachment, no other witness than himself was examined on behalf of *Rebecca Jones:* That he made the same statement to that jury, that he made on the trial of this cause:   That he informed them that *Roberts* had told him he had not accepted the order: That he had informed them that it was at *Roberts'* instance that he had procured the attachment to be sued out, and that he should not have gone to *Rebecca Jones*, and had the attachment issued, if it had not been for *Roberts*.

Judge DARLINGTON was also examined to prove what occurred on the trial of the *scire facias*, and fully corroborated the evidence of *Fisler*.

The court was requested by the plaintiff's counsel, to instruct the jury on the following points:

" 1. By the evidence in this cause, *Roberts* made himself liable to pay the order to *Moses Coates*, before the attachment issued.

"2. *Coates* has done nothing, whereby his right to hold *Roberts* responsible, is waived or lost.

" 3. If the jury believe that procuring the attachment to be issued under the circumstances proved, was an act of bad faith, in violation of the contract with *Coates*, the proceedings under it ought not to screen the defendant from responsibility.

" 4. If this jury believe that the conduct and language of *Roberts* furnished evidence in the foreign attachment, which was calculated to mislead the jury as to his liability to pay the money to *Moses Coates*, the judgment in that suit ought not to protect him.

" 5. If the jury in that case believed the testimony of *George Fisler*, they could but find against the defendant, and the defendant's own affidavits, now produced, shew, that what he represented to *Fisler* was incorrect.

" 6. If *Roberts* and his counsel neglected, in the foreign attachment, to prove all the facts necessary to shew the true state of the transaction with *Moses Coates*, we are entitled to recover, notwithstanding the judgment in that attachment."

(Coates *v.* Roberts.)

On these points the following charge was given, which was reduced to writing and filed by request of the plaintiff's counsel.

"1. By the evidence in this cause it is shewn that *Robert Roberts* was liable to pay to *Isaac Coates,* the sum of three hundred and fifty six dollars, and thirty-two cents, upon the death of his mother, which took place in *October,* 1824, and that *Isaac Coates,* by his writing of 6th *May,* 1820, requested him to pay it to his brother *Moses Coates.* According to the testimony of Dr. *Jesse Coates,* this order was presented to the defendant, about the end of *October,* 1824, who then said he was satisfied, and would pay the money; this was a sufficient acceptance of the order, or inland bill of exchange, and if nothing else appeared in the cause, would make Mr. *Roberts* liable to pay the amount of it to *Moses Coates,* before the attachment issued; without at all entering into the question which subsequently arose with other creditors, whether the real ownership of the three hundred and fifty-six dollars, and thirty-two cents, was in *Moses Coates,* or *Isaac Coates.*

"2. The court cannot say to the jury that '*Moses Coates* has done nothing whereby his right to hold *Roberts* responsible is waived or lost,' without assuming a disregard of much of the evidence in the cause. It is in evidence, that on the *scire facias* issued by *Rebecca Jones* against *Robert Roberts,* garnishee of *Isaac Coates, Moses Coates* the present plaintiff, having been very early apprised of the attachment, and the claim upon the money still as the property of *Isaac Coates* and not of him *Moses Coates;* and the defendant, *Robert Roberts* in that *scire facias,* having pleaded that he had no money or goods in his hands belonging to *Isaac Coates,* and *Moses Coates,* the present plaintiff, claiming then, as he does now, that the money in the hands of *Robert Roberts* belonged to him and not to *Isaac Coates,* participated in the defence then made. According to the evidence he procured the attendance of witnesses, was present with the counsel during the trial, produced the very order now before you, and according to his assertion to Mr. *Fisler* a short time ago, he carried on that suit in concert with Mr. *Roberts:* Now, when this *scire facias* was issued against the garnishee, and the question distinctly put in issue by the pleadings, whether the money in the garnishee's hands was really the property of *Isaac Coates,* or of another person (*Moses Coates,* the plaintiff,) and of course whether it was liable to the plaintiff's attachment, if from the evidence, this jury should be of opinion, that *Moses Coates* the plaintiff had notice, an opportunity to take defence, and actually did take defence, it now no longer stands as a mere *ex parte* proceeding; the decision in that case that the money in the hands of *Roberts,* the defendant, was the property of *Isaac Coates,* and liable to the attachment against him, was in effect a decision that it did not belong to *Moses Coates,* notwithstanding his order and alleged acceptance, and *Moses Coates* is bound

by that decision:—taking it for granted there was no fraud or collusion on the part of *Roberts.*

" 3. Whether *Roberts,* properly or improperly, procured the attachment of *Rebecca Jones* to be issued, or whether it was an act of bad faith or not, in violation of his alleged contract with *Moses Coates,* the whole evidence on the subject, such as it was, was in the power of, and spread before the plaintiff on the trial of the *scire facias,* in which there is evidence of his participating and taking defence, and by which decision, as has been before remarked, he must be bound, unless there has been shewn collusion, misrepresentation or neglect, onthe part of the defendant, in conducting that suit to judgment.

" 4th. 5th. & 6th. If the conduct and language of *Robert Roberts* furnished evidence in the foreign attachment, calculated to mislead the jury as to his liability to pay the money to *Moses Coates:* If they believed the testimony of *Fisler* and *Roberts* had misrepresented the matter to him, and if Mr. *Roberts* neglected to prove all the facts necessary to shew the true state of the transaction with *Moses Coates,* without giving the present plaintiff an opportunity to make and prosecute his claim, or in the language of the replication, by collusion, misrepresentation and neglect, suffered a verdict and judgment to pass against him, to the prejudice of the plaintiff's rights, the judgment ought not, and will not protect him, and the plaintiff here will be entitled to recover, nowithstanding such collusive judgment. But if the jury shall be of opinion, that *Moses Coates,* the person then as well as now interested in shewing that the money in question, in the hands of *Roberts,* was really his and not *Isaac Coates',* had due notice of the claim, an opportunity to come forward, assist in the defence and maintain his right to the money, to employ counsel or engage counsel in concert with Mr. *Roberts,* to produce his witnesses and maintain his claim upon the money, he is not to throw the whole blame of defeat on Mr. *Roberts,* the stake-holder:—it would be a fair contest between parties for a particular sum of money, in which the plaintiff was defeated;—a regular judgment has passed against his claim ; the money has been paid accordingly, and it would be against law and equity, to demand of the defendant to pay it over again."

The charge was excepted to by the counsel for the plaintiff, who in this court, assigned the following errors:

1. That the court erred in their charge to the jury upon the several points submitted by the plaintiff's counsel, as reduced to writing and filed, pursuant to the act of assembly.

2. The charge ought to have been in favour of the plaintiff.

The cause was argued by *Dillingham* and *J. Sergeant,* for the plaintiff in error, who cited *Chitty on Bills,* 1.    Stock v. *Mawson,* 1 *Bos. & Pull.* 291.    *Walwyn* v. *St. Quintin, Id.* 654.    *Chitty on Bills,* 12 (note), 42, 48, 49, 50, 65, 66, 67, 68, 69, 171, 172, 176, 177, 180,

186, 188, 189, 191, 194. *Cooke* v. *Colehan*, 2 *Str.* 1217. *S. C. Willes*, 396. 1 *Stark. on Ev.* 184, 185, 187, 188, 191, 192, 241, 254. 1 *Phill. Ev.* 223, 226, 243, 245. 2 *Harr. Ch. Pr.* 367. *Co. Litt.* 271, *a.* 2 *Prest. on Conv.* 327, 345. *Fermor's Case*, 3 *Co. Rep.* 77. *Borden* v. *Fitch*, 15 *Johns. Rep.* 145. *Hull* v. *Blake*, 13 *Mass. R.* 153, 157. *Sergt. on Att.* 184, 185. *Moore et. al.* v. *Spackman*, 12 *Serg. & Rawle*, 287. *Rapelje* v. *Emery*, 2 *Dall.* 232. 1 *Eng. Com. Law Rep.* 188.

*Tilghman* for the defendant in error, cited *Heller et. al.* v. *Jones*, 4 *Binn.* 61. *Davis* v. *Harvard*, 15 *Serg. & Rawle*, 165.

The opinion of the court was delivered by

HUSTON J.—This suit was *assumpsit*, and the declaration contained four counts. The first was on an order drawn by *Isaac Coates* in favor of *Moses Coates*, and dated 5th month 6th, 1820, for three hundred and fifty-six dollars, and thirty-two cents. The second was for money had and received. The third on the acceptance of the said order, as an inland bill of exchange; and the fourth was a special count setting forth all the facts. The pleas were *non assumpsit* and payment, with leave, &c. After the last two counts had been added to the declaration, the defendant pleaded a foreign attachment by *Rebecca Jones* against *Isaac Coates*, with notice to *Roberts*, as garnishee; *scire facias* against the garnishee, and judgment thereon, with an averment that *Moses Coates* took defence in that attachment, &c. &c. The plaintiff replied that the attachment was issued at the instance of *Roberts*, and the judgment occasioned by the collusion, misrepresentation and neglect of the said *Roberts*, and denied that he took defence, &c. The defendant rejoined that there was no collusion, misrepresentation or neglect. On this issue the parties went to trial. There was not in the court below, nor here, any objection to the pleadings. In fact the special plea of the attachment and judgment on it was, perhaps, not formal, but it was not necessary, as it seems to be well settled, that whatever strictness was once necessary, and perhaps is in some forms of action against the garnishee, yet when *assumpsit* is brought against him by the defendant in the attachment, or any claiming under him, the garnishee may plead *non assumpsit*, and give the attachment in evidence. 1 *Saund.* 67, *Turbill's* case in notes; and here, in debt on bond, the defendant may plead payment with leave, &c. and give the attachment in evidence. In England, the attachment being by the custom of London, and in an inferior court, great strictness was once required in setting out the custom correctly, and all the proceedings, even to the payment of the money, but here the attachment is given by act of Assembly in the courts of common law, and no special circumstances are necessary to give jurisdiction.

In order to understand the points, here made in this case, it will be necessary to advert to the facts. I have carefully extracted them from the record. Dr. *Jesse Coates* proved, that on the 30th

(Coates *v.* Roberts.)

*October*, 1824, he went with *Moses* Coates to the defendant; *Moses* took out the order and shewed it to *Roberts*, who said he would pay the order and all the rest, when he was satisfied of the death of the widow.    (It was understood in the cause by all, that *Roberts* was to pay to each of the heirs of *Moses Coates*, deceased, three hundred and fifty-six dollars, and thirty-two cents, on the death of the widow.) *Moses* then shewed him, and at his request read, a letter, stating the death of the widow, and the precise time at which it took place. *Roberts* said he was satisfied, and would pay the money.    He said he must go legally about it; he must go and see Mr. *Duer*, (a lawyer) ; that *Duer* did all his business.    He further said, that when *Moses* presented the order, he told *Roberts* that *Isaac* owed him money and gave him that order in payment of his debt.    The witness, after other matters, perhaps not material, proved, on a cross-examination, that he was subpœned, and attended at the trial of the *scire facias*, on the attachment, at the instance of *Moses Coates ;* that *Moses* sat by *Duer*, the counsel, at that trial, and that the witness then proved what is stated above.    The witness then, at the instance of the plaintiff, proved the handwriting of *Isaac Coates*, to the order, and that *Isaac* told him he got money of *Moses* to go to the western country, and had given this order in payment of it.

*Roberts* had been examined on interrogatories in the foreign attachment, and the plaintiff's counsel then read his answers, the material part of which was, that he had three hundred and fifty-six dollars and thirty-two cents, in his hands, to be paid at the death of the widow : that *Moses* had presented the order, and he had agreed to pay it when satisfied of the death of the widow : that *Moses* had shewn him a letter which satisfied him, and that this was before the attachment was served on him.

The plaintiff's counsel further produced the record in the attachment to shew the date when it issued, *viz.* the 3rd of *December*, 1824.

The defendant's counsel then read the whole of the record in the attachment suit, in which there was a verdict for the plaintiff on the issue against the garnishee, (the demand of the plaintiff in the attachment, was eight hundred dollars.)    The verdict further found that there was in the hands of the garnishee, the sum of three hundred and fifty-six dollars, and thirty-two cents.    A motion for a new trial was made and argued, and judgment given for the plaintiff, on which a *fieri facias* issued for the debt, &c.

*George Fisler* was then called by the defendant, who proved that he was the agent of *Rebecca Jones* in the attachment, and at the trial of the *scire facias*, against the garnishee : that *Moses Coates* attended the trial : that the parties were contending who should get the three hundred and fifty-six dollars, and thirty-two cents, which was due *Isaac Coates*, on his mother's death : that *Moses* produced this order : that in a conversation lately between *Moses* and the defendant, each said the other had employed *Duer*, (the counsel), but

*Moses* admitted he paid him a fee for that business: that *Moses* said *Roberts* and he had carried on that suit in concert, which *Roberts* denied, and said he never paid any thing. Mr. *Duer* is dead.

The defendant then called Mr. *Pyle*, the counsel for *Rebecca Jones*, and proved by him, the payment of the money by *Roberts*, on the *fieri facias*, to him as attorney to Mrs. *Jones*, and the defendant closed.

The plaintiff then called *George Fisler* again, who stated that in the fall of 1824, *Roberts* told him that *Moses Coates* had presented an order purporting to be written by *Isaac* for this money: that he had told *Moses* as soon as he had legal evidence of the widow's death, he would pay the whole and be done with it: that *Roberts* further told him that one *Edwards* had attached the money in his hands: that there would be more than would pay *Edwards:* that as I knew *Rebecca Jones*, I might tell her, and there would be an opportunity for her to try to get a part of her debt: that the witness told her, and she gave him her bond on *Isaac* to take to a lawyer: that he was with the sheriff when he served the attachment, and when asked how much money he had, *Roberts* replied, between three and four hundred dollars. *Roberts* had told me (the witness,) that if *Rebecca Jones* took an attachment, she would have an opportunity to get part, as there was more than would pay *Edwards*. He said he had not accepted the order to *Moses*. The witness further said he would not have told *Rebecca Jones*, and no attachment would have issued, if *Roberts* had not told him: that he gave the same evidence at the former trial: that he and Dr. *Coates* were the only witnesses examined at that trial: that he did not remember that Dr. *Coates* told the jury at the former trial that the order was given by *Isaac* for a debt to *Moses*.

Judge DARLINGTON, before whom the issue on the *scire facias* in the attachment was tried, was then called, who from his notes proved, that Dr. *Coates*, proved as here, the presentation of the order to *Roberts*, and what passed: that Mr. *Duer* then asked Dr. *Coates* to state how much money *Isaac Coates* owed to *Moses*, which was objected to, and the court decided in these words: "We cannot go into the state of accounts between *Isaac* and *Moses Coates*, except so far as it is connected with some actual transfer of this particular debt;" and no more was said. Mr. *Duer* then read the order: that Dr. *Coates* was asked at whose instance he attended that trial, and he replied at the instance of *Moses Coates:* that the counsel of *Rebecca Jones*, then called *George Fisler*, and asked him to relate the conversation he had with *Roberts:* that this was objected to, but admitted, he being a party to the cause, and his declarations good evidence against him.

The judge then read from his notes the testimony of *Fisler*, in that former trial, agreeing with what he stated as above.

The judge further proved that it was admitted the money was in the hands of *Roberts;* and Mr. *Duer*, the counsel, stated to the jury, that

(Coates *v.* Roberts.)

the only question was, whether at the time of the attachment laid, the money belonged to *Isaac Coates,* or *Moses Coates.* —

The foregoing was all the evidence given in this cause. The counsel then stated certain propositions, on which he requested the court to charge the jury, for which I refer to those propositions, and the charge of the judge. The errors assigned were in the answers to the propositions, but in fact the argument here turned principally on other matters.

And first, it is alleged, there was error in the admission of *Fisler* to prove in the trial on the *scire facias,* in the attachment, what *Roberts* had said to him ; and next the whole practice of interpleading is objected to, at least, as practiced in this state.

I shall notice this first. There certainly was a time in *England,* when the practice in the courts of law was very different from what it is now in that country, and more different from what it always was, and is here. That practice gave constant employment to the courts of chancery ; and even the courts of chancery have extended their powers, or applied them to subjects, not formerly known. When bills of interpleader were first used, I shall not inquire. Lord Hardwicke speaks of them in 1 *Vezey,* 249, as a new invention, and not to be encouraged ; they have, however, been applied much more extensively, than in his time, and now parties are compelled to interplead by the courts of law, without the trouble, delay and expense of a bill in chancery.

We are told (see *Maddock's Ch.* 173,) a bill of interpleader lies where a person claiming no right in the subject, and not knowing to whom to render a debt or duty, apprehends injury from claims made by two or more claiming in different rights the same debt or duty. A mere claim is now the subject of such bill, and that the one claims in a legal and the other an equitable right. It is granted on an affidavit that the bill is not exhibited by fraud or collusion, but for his own security, but it need not state that it is done at his own expense, nor that it is filed without the knowledge of either party. The bill must shew that there are two persons in existence, each of whom claims the property ; if one of them does not appear or will not support his claim, the debt is given to the one who does appear, and a perpetual injunction is granted as to the other. I shall not go into the inquiry as to all the cases to which it applies ; it is the appropriate remedy for a mere stakeholder. Sometimes a trial at law is directed, and after the plaintiff in the bill has no more concern in the matter, his death does not stay the proceedings, and the cause will be decided between the claimants, without a bill of revivor, 1 *Vernon,* 351.

We have no court of chancery, but as it often happens, that more than one person claims an interest in, or right to the same goods or money, and as it would be a disgrace to the administration of justice, that the law should levy a sum of money from a defendant for one person, and the same law should, without any fault of the defendant, compel him to pay the same debt to another, the practice of permit-

ting a party to interplead, has long been well known, and in some cases, the courts compelled a person to interplead, or more properly, to appear and take defence in a suit, or to be forever barred.   And by an act of Assembly, 16 *April,* 1827, for distributing money raised by sales on execution, the court are required to give notice to all who may claim; and if any person neglects to appear and take defence against any claimant, such person is forever barred; and by the decision of this court, it is not necessary nor proper that each claimant should bring an action; if one sues, and an issue is directed, every claimant must interplead, or be forever barred.   2 *Rawle,* 37.   This act of Assembly is only a recognition of what was always the law and the practice, with the addition of prescribing what shall be notice to all concerned, and of giving an appeal to the Supreme Court. So under the 14th section of the act, 20th *March,* 1810, giving jurisdiction to justices of the peace, it is provided that a judgment may be entered before a justice, by confession, &c., for a sum exceeding one hundred dollars; if, however, any creditors of the defendant shall make oath before the justice, that there is just cause to believe such judgment was confessed with a view to defraud creditors, it is made the duty of the justice to transmit a transcript of his judgment to the prothonotary of the Common Pleas, whose adjudication thereon shall be final.   Under this act the practice has been in some counties to order a feigned issue; in others the court on proper affidavits opens the judgment, and permits the creditor or creditors to plead, and the plea is entered as being made by some creditors; the verdict and judgment in either form, in the words of the act, are final.

The case of *Heller* and *Jones,* 4 *Binn.* 61, is the earliest recognition I have found in our books of interpleading, and the effect of it.   The proceeding began by a judgment confessed in 1787.   On a *scire facias* to revive this judgment, *Miller,* who claimed under a younger judgment, on which he had sold the land, was permitted to enter a plea, and he gave notice of special matter.   This was before RUSH, then President of that district, and who had been a justice of the Supreme Court, under the former constitution.   The cause was removed to the Supreme Court, and tried at *nisi prius* in 1795.   No objection was made to his right to interplead, though eminent counsel were concerned; but for some cause, he did not appear at the trial; no witnesses were examined, and a verdict and judgment were rendered for the plaintiff, who levied on and sold the land, and brought ejectment against *Heller,* who had bought from *Miller.*   *Heller* offered to prove the same matter which *Miller* had alleged in his plea to the *scire facias,* and it was held he could not: That *Miller,* under whom he claimed, having been admitted to interplead, and put in a plea, &c., was barred, although he afterwards neglected the defence, and *Heller* claiming under him, was also barred.   In the argument, the right of *Miller* to appear and interplead, was denied, and also the effect of it, if he had been heard, and Judge BRECKINRIDGE was with them, but the Chief Justice and

(Coates *v.* Roberts.)

Judge YEATES, whose practice began in 1762, and had been perhaps more extensive than that of any other man, then or since in this state, had no doubt as to this point, and I have never heard the right of a party interested to interplead, denied since.   The acts of assembly, above referred to, are predicated on the existence of such practice; they did not introduce it.

The only difference between the practice here, and in *England,* is, that there, when one claimant sues, and interpleading is ordered, the name of the other claimant is substituted as defendant, and the name of the bailee or stakeholder, is struck out; here, so far as I have known the practice, one claimant sues him who has the money or property, and the other claimant is permitted or compelled to defend the suit, and shew his right.   If after appearing and pleading, the defence is neglected or abandoned, the party is forever barred.   Much more will this be the case, if a party defends the cause and loses it.

Let us now come to the only remaining point in the cause, viz: was the recovery in the foreign attachment, a bar to the recovery of the present plaintiff?   I do not understand this to be denied, if the proceedings have been fair.   Some questions have been made as to the necessity of the garnishee giving notice of the attachment to the defendant, and there is one case, 3 *Wilson,* 297, *Fisher* and *Lane,* in which it was held necessary, and that for want of it, the defendant, whose money or goods have been attached or taken from the garnishee, may recover again from him.   The prior and subsequent cases do not say so, and it is not necessary to give an opinion on the subject, because our acts of assembly do not require it; because they require the attaching creditor to give back, to restore it, if his debt is disproved, and because, in this case, the person who claims the money, had notice, and took defence, as appears from the evidence, and from the finding of the jury.

Where the attachment has been served, but proceedings on it are still pending, and the defendant sues the garnishee, the attachment pending must be pleaded in abatement, and is good.   5 *Johns.* 101, *Embree* and *Collins* v. *Hanna.*   "Nothing," says KENT, C. J. in delivering the opinion of the court, "can be more clearly just, than that a person who has been compelled by a competent jurisdiction to pay a debt once, should not be compelled to pay it over again;" and after reviewing the cases, he comes to the conclusion that it would be a good defence, and says, "if then, the defendant would have been protected under a recovery, by virtue of the attachment, the same principle will support a plea in abatement of an attachment, pending and commenced prior to the present suit."

In our own state, a foreign attachment commenced and proceeded in, for some time, and then discontinued, was declared to be evidence, to stop interest, during the time it was pending.

It would be a waste of time to use arguments, or to cite cases to prove that the decision of a court of competent jurisdiction, upon the same point, is conclusive, where the same point comes again in ques-

tion, between the same parties, or privies; and the decision of a court on a special point, on which a court has extensive jurisdiction, or in which the proceedings are in *rem*, is conclusive on all the world. Thus, the discharge of an insolvent, under the clause called the bread act, is conclusive on all the world, when coming incidentally before another court. *McKinney* v. *Crawford*, 8 *Serg. & Rawle*, 354. Whoever has an interest, and has notice, and takes part in a trial, is bound, though not named in the record; thus a *recovery in* ejectment against a covenantee, is not evidence of the defect of the defendant's title against the covenantor, unless he had notice; but if he had notice, and especially if he defended the suit, it is conclusive. *Leather* v. *Poultney*, 4 *Binn*. 356. *Bender* v. *Fromberger*, 4 *Dall*. 436, in note. So the record of an action of trespass between *B*. and the *cestui que trust* of *A*., is evidence in a subsequent ejectment between *B*. and *A*., *Calhoun's lessee* v. *Dunning*, 4 *Dall*. 120.

But it is said, the court did not answer the 4th point separately from the 5th and 6th, and there is error in this. And we are reminded by the counsel, that these points were drawn up with great care. I have long known that these propositions to be submitted to the court, are often drawn with as much care as candour. I do not allude to this case more than many others. I gave my opinion when in the Common Pleas, in *Stewart* v. *Shoenfelt*, which was sanctioned by the then Supreme Court, 13 *Serg. & Rawle*, 356. The same opinion is to be found in many cases. The 4th, 5th, and 6th points all relate to the same matter, and whoever reads them, and the charge, must see that they are all freely and fairly answered. If it is alleged that every proposition must be answered in the very words put by the counsel, I utterly deny it; counsel will select a part of the facts, and ask what is the law on those facts; now the jury are to find on all the facts, and not on any separate number of them, and often are to decide the cause on the facts, and the circumstances under which they occurred, and the intentions which attended those who did the actions or spoke the words, and it is the duty of a judge to state all this to a jury, and if he does not, he does not do his duty.

The conduct of *Robert Roberts*, may have been perfectly fair, and all his declarations precisely true, and yet that conduct, and those declarations may have occasioned a verdict and judgment against *Moses Coates*, and yet *Roberts* not be liable. If his conduct was deceptive, and his statements untrue, and especially if this happened by collusion with *Jones*, I admit it may prevent the former trial on the *scire facias*, in the attachment, from being conclusive, and so the judge told the jury, and such was the issue trying, and they have found no collusion, misrepresentation, or neglect. This was the issue, and the only material issue which could be formed in the cause. *Moses Coates* had all the right of *Isaac Coates*, or he had no right; that he had notice, was not denied at the trial or here; the only dispute was, whether he defended in the *scire facias*, alone, or in concert with *Roberts*; and it is perfectly immaterial which, for in either

(Coates *v.* Roberts.)

case, that trial, verdict and judgment, were conclusive on the matter now trying, unless there were collusion and fraud in *Roberts.* If the jury in this case found there was collusion, misrepresentation or fraud, the former verdict and judgment were not conclusive, and they must a second time have tried whether *Roberts* accepted the order of *Isaac* to *Moses,* and whether that order was to pay *Moses* a debt, or to take the money out of the reach of *Isaac's* creditors. If the present jury believed there was no fraud, the cause was at an end; the other matters had been before decided, and could not be inquired into.

I need not more than mention the objection, that evidence alleged to be illegal, was given on the trial of the *scire facias;* the elder counsel passed it over properly; we cannot inquire into it here. The lawyer employed and feed by *Moses,* ought to have taken a bill of exceptions, and could have taken a writ of error; if *Roberts* had objected, it would have been considered. *Roberts* was not bound to take a writ of error; a stakeholder, and he was literally so, and never claimed any right, is not bound to take a writ of error; if another defends in his name, and will agree to be answerable for costs, he is bound to permit his name to be used for a writ of error; this was not asked of him.

Judgment affirmed.