## Anderson *versus* Young's Executors.

21      443
26 SC ²383

1. A witness is not to be permitted, at the instance of the party calling him to repel an objection to his competency on the ground of interest established by other evidence.

2. A garnishee in whose hands a note is attached is protected by the judgment against all claim to it on the part of an assignee, though the latter was not a party to the proceeding or had not actual notice of it.

3. The law only requires of the garnishee that in good faith he shall see that the money is recovered against him *in due course of law.* *Where* there is no fraud or collusion on the part of the garnishee, a recovery against him in the foreign attachment is a good defence to an action against him by the defendant in the attachment or by one claiming as assignee of the note attached.

4. In the case of a *scire facias* against a garnishee in a foreign attachment, where the garnishee had possession of the note, alleging payment, one who appeared on the note as the second and last assignee of it, is, on the ground of interest, an incompetent witness on the part of the garnishee to prove that the *first* assignment of the note took place *before* the attachment issued, and was for value.

5. The admissions of the payee of a note attached as his property, made whilst he had the note in his possession, that it had been attached, are not to be rejected *on the assumption* that they were made *after* the assignment of the note, the witness stating that the note had no assignment on it at that time.

ERROR to the Common Pleas of *Bedford county.*

A writ of foreign attachment was issued on the 23d January, 1843, out of the Common Pleas of Bedford county, in favor of Robertson and Lind, executors of the will of S. Young, deceased, against Alfred Cline. Espy L. Anderson was made garnishee. The attachment was served on Anderson on the 30th January, 1843. The claim of the plaintiffs was founded on a note as follows:

$5000.                          Hagerstown, July 8, 1839.
Ninety days after date, we, or either of us, promise to pay to the order of John Robertson and J. Lind, executors of S. Young, for value received, five thousand dollars.

Signed              ALFRED CLINE,
                    FREDERICK DORSEY,
                    WILLIAM PRICE.

After plea, verdict was rendered against Cline, on 12th Nov., 1844, for $6603.34.   Feb. 17, 1847, judgment on the verdict.

On 3d March, 1847, a *scire facias* was issued against Anderson, the garnishee—who pleaded *nulla bona.* The property attached in the hands of Anderson, was a promissory note by Anderson

to Cline, dated 1st January, 1842, for $1500, payable six months after date, with interest from the date. The note was in the possession of Anderson. It was produced on the trial, and it had upon it endorsements, viz. :

Received, August 16, 1842, of E. L. Anderson, two hundred and fifty dolllars on the within note.

Signed          A. CLINE.

I assign all my right, title, and claim to the within note to F. D. Fouke, for value received.   Jan. 22, 1843.

Signed          ALFRED CLINE.

On this 12th day of October, 1843, I assign all my right and claim to the within to E. M. Mealy, for value received, without recourse.                    Signed          F. D. FOUKE.

On the trial it was objected, on the part of Anderson, that the note attached in his hands had been thus assigned by Cline before the service of the attachment, viz., on the day next before the writ issued.   In support of the objection was offered the deposition of E. M. Mealy, the assignee of the note, to which it was objected, on part of the plaintiffs, that the witness, on the 12th October, 1843, was the assignee of the note. The deposition was rejected. The witness testified, in the deposition, that he was present in Hagerstown at the assignment of the note by Cline to Fouke, and that it was made on the 22d January, 1843, when it purported to have been made. That Fouke at the time alleged that Cline was indebted to him. The witness said that he himself had no interest in the event of the suit. He further said that the assignment of the note on 12th October, 1843, *to him*, was made by Fouke solely to enable the witness to collect the money for Fouke; that he did not collect any money from Anderson, and returned the note to Fouke. That Cline and Fouke are both dead.

On the part of the *plaintiffs* it was alleged that the assignment by Cline to Fouke was fraudulent; and that it was not upon the note when the attachment was served. To prove the allegation, was offered the deposition of *William Price*, one of the makers of the note to the plaintiffs. The deposition was objected to, but was admitted.

The witness stated that it was at his instance that the note to which he was a party, was placed in the hands of counsel for the plaintiffs, and the attachment in question sued out. That *after* the attachment against Cline was issued, he thought about six months thereafter, Cline came to his office in Cumberland, and showed him the note of Anderson, saying *at the time, that it*

[Anderson v. Young's Executors.]

*was the note of Mr. Anderson of Bedford, upon the debt due to him,* on which the attachment in Bedford *had been laid.* Deponent examined the note. That Cline *proposed to assign the note to deponent, &c., as it was already bound by the attachment, under which assignment, as he said, deponent would get the money from Anderson and save all further costs and trouble in prosecuting the attachment.* He said there was no assignment at that time on the note. That Cline at the same time remarked, " *that although the attachment was laid on other property or credits, supposed to be his, in Bedford, yet that this debt due him by Anderson was all that the plaintiffs in the attachment would get, and he thought, therefore, deponent had better take the note and strike off the attachment.*"

He added that he refused to have anything to do with the note, and returned it to Cline. He further stated that he had been *released* by the plaintiffs from liability on the note, to which he had been a party, and the release was produced.

On the part of the plaintiffs, an almanac for the year 1843 was produced, from which it appeared that the 22d January, 1843, the date of the assignment by Cline to Fouke, was *Sunday.*

KIMMEL, President Judge, observed to the jury: that there was evidence of the payment of the note by Anderson, *in the fact of his being in possession of it;* but that there was no evidence showing when or to whom he paid it, whether before or after the service of the attachment.

Also; that if the assignment of the note by Cline to Fouke was fraudulently made, and the note was still unpaid, then the plaintiffs were entitled to a verdict; the credit of $250, endorsed on the note, being allowed.

He further charged that if the note had been assigned by Cline to Fouke *on Sunday*, the assignment on that day would have only rendered it *void as between Cline and Fouke*, and that notwithstanding this, the defendant would be entitled to a verdict, unless the assignment were *fraudulently* made or made *after* the service of the attachment.

May 6, 1852. The jury found that E. L. Anderson had in his hands at the time the attachment was executed, the amount of the note upon which there was a credit, dated 16th August, 1852, for $250, the same being of the value on the day of the verdict, of $2068.84.

Error was assigned: 1. To the 'rejection of the deposition of Mealy. 2. To the admission of the deposition of Price, the same having been objected to generally, and also specially to the part of the deposition relating to the declarations of Cline; the same being printed in italics. 3. To the charge that the assignment of the note being made on *Sunday*, rendered the note void only as

2 P

[Anderson *v.* Young's Executors.]

between Cline and Fouke.  4. In submitting to the jury whether there was fraud in the assignment by Cline to Fouke.

*King*, for plaintiff in error.—He contended that Mealy was a competent witness—that he was not interested.  He was the last endorsee by transfer made *after* the maturity of the note.  He was no party to the suit, and it was contended that the note had been paid: Bank *v.* Forster, 8 *Watts* 304; 5 *Barr* 52–3, Gilpin *v.* Howell; *Story on Pro. Notes* 372; 9 *Barr* 507.

The deposition of Price was not admissible.  It was said that it was admitted on the ground of a privity between *Cline and Anderson;* but it was contended that their interests were hostile: 2 *Barr* 310.  Cline's declarations were not admissible.  He had an interest in swelling the fund in the hands of Anderson the garnishee.

It was said that the note and the assignment were both made *in Maryland,* and though the assignment was made on Sunday, it was not within the Act of 1794.  A bond executed on Sunday is not void at common law: 3 *W. & Ser.* 444.

*Russell*, contrà.—It was contended that, *primâ facie,* Mealy was interested, and that he was therefore incompetent to show that he had no interest in the note: 1 *Rawle* 196, Griffith *v.* Reford; 10 *Barr* 167, Thomas *v.* Brady.  If the note were paid by a new note or otherwise, there was no evidence when it was paid or arranged.

The deposition of Price was admissible to prove the declarations of Cline made after the attachment and whilst Cline had the note attached in his possession—the note being then overdue.  The testimony was material as tending to show that there was then no assignment on the note—instead of its being made on the 22d January, 1843, the day before the issuing of the attachment, that it was not on it about six months afterwards.  It was said that the declarations of Cline were evidence against a fraudulent assignee: *Greenleaf on Ev.* 190–1; 13 *Ser. & R.* 107; 2 *Starkie* 261, 326; 5 *Harris* 345.

The opinion of the Court, filed September 6, was delivered by

LEWIS, J.—On the 23d January, 1843, a foreign attachment was issued by Young's executors against David Cline, which was executed on the 30th January, 1843, by attaching the amount of a promissory note due by Espy L. Anderson to Alfred Cline, in the hands of Anderson as garnishee.  On the 7th February, 1847, judgment was obtained against Cline, the defendant in the attachment.  A *scire facias* thereupon issued against Anderson the garnishee, who pleaded *nulla bona,* on which issue was joined.  On

the trial of this issue it appeared in evidence that on 1st January, 1842, Anderson gave a promissory note for $1500, payable to Alfred Cline, or order, six months after date. On 22d January, 1843, Alfred Cline assigned the note to F. D. Foulke. On the 12th October, 1843, F. D. Foulke assigned it to E. M. Mealy. These assignments were endorsed on the note and purported to be for value received. The note, at the time of the trial, was in the possession of Anderson.

The deposition of E. M. Mealy was offered by the garnishee, to prove that the assignment from Cline to Foulke was made before the issuing of the attachment, and was for a valuable consideration, and to prove further, that the assignment to the witness was made solely to enable him to collect the note. The deposition was rejected, and this is the first error assigned.

The party objecting to a witness may examine him on his *voir dire*, or resort to other evidence to establish the objection; but after electing one of these courses he cannot resort to the other. Nor can the witness himself be received at the instance of the party offering him, to repel the objections on the ground of interest established by other evidence. As the evidence stood when the deposition of E. M. Mealy was offered, he appeared to be the equitable assignee of the note in controversy. As the possession of it by Anderson is relied upon as *primâ facie* evidence of its payment, it is proper to examine the case in that aspect. The competency of the witness may be decided upon by considering the effect which the verdict may have upon his interest.

A foreign attachment is not altogether a proceeding *in personam*. It is in the nature of a proceeding *in rem*, to which, for the purposes of the particular action, all the world are parties. In a writ of foreign attachment, personal notice to the defendant is not required. On the contrary, the action proceeds on the ground that *actual* notice cannot be given. By the custom of London, from which our proceedings are derived, the *garnishee* was not warned until the sergeant-at-mace made return to the process awarded against the *defendant*, that he *had nothing* in the city or the liberties thereof, whereby he could be summoned, *nor was to be found* within the same. After this return, and four defaults entered, judgment was rendered against him; under which the money, or effects of the defendant, in the hands of the garnishee, might be levied in satisfaction of the judgment. The domicil of the debtor was immaterial. But in Pennsylvania, the Act of 13th June, 1836, has made a change in this particular. A foreign attachment will not lie here, *if the debtor resides within the Commonwealth*, or *is within the county* at the time of the issuing of the writ. It is precisely because *actual notice cannot be given*, that the law has provided this method for the collection of debts against

non-resident debtors without it, and has prescribed what shall be
deemed *constructive notice.* If the plaintiff, who is to be benefited
by the proceeding, be not required to give actual notice to the
defendant, on account of the impossibility or difficulty attending
it, the reason against imposing that burden upon the garnishee is
much stronger, for he has no interest whatever to be promoted by
the proceedings. If the judgment be valid for the purpose of
compelling payment of the debt to the plaintiff, it must be equally
effective for the garnishee's protection against a repetition of the
demand. We must administer the law as a system intended to
promote justice, and not as a snare to entrap the innocent. It
may seem hard that the defendant in the attachment shall lose his
demand against the garnishee, by a proceeding of which he had
no notice. But if he owes the debt claimed by the attaching cre-
ditor, there is no hardship in being compelled to pay it; if he
does not owe it, the law has provided an ample remedy if he dis-
prove or avoid it within a year and a day after execution award-
ed against the garnishee. The execution cannot be awarded until
the debt is due and payable, so that an action might have been
brought for its recovery by the defendant in the attachment. His
neglect to pursue his claim bars his right. It is a statute of limita-
tion. The legislative power may fix a longer or shorter period of
limitation, as justice or policy may require. In a case of this
kind, after an adjudication, and in support of it, it is as just to
bar the right to reverse it or to recover the debt attached, after a
year and a day, as it is in ordinary cases to bar an action after six
years without an adjudication. All that the law requires from the
garnishee is that he shall, in good faith, see that the money is re-
covered from him by due course of law. Where this is the case,
and there is no fraud or collusion, a recovery in foreign attach-
ment is a good defence to an action brought by the defendant in
the attachment against the garnishee. If the defendant in the
attachment may thus be barred, those who stand in his shoes are
in no better predicament. We except, of course, the *bonâ fide*
holder of negotiable paper, who is protected by the necessary rules
of commercial law. But *choses* in action are in general not assign-
able at common law. The assignee acquires but an equitable right;
and where he accepts the assignment of a note, after it is over-
due and bears the marks of dishonor on its face, he takes it sub-
ject to all the equities or charges to which it was subject in the
hands of the original holder. In such cases the assignee is bound
by every proceeding which binds the assignor. If one is barred
without actual notice, the other is also. If the garnishee is not
required to notify the defendant in the attachment, still less is he
bound to notify the assignee, of whose rights, or even existence,
he may have neither knowledge nor the means of knowledge. We

determine this question upon the assumption that Mealy had no notice of this attachment, because we are unwilling to lay it down as a general rule that every witness whose deposition is taken in a cause, at a distance from the place and before the time of trial, shall be thereby affected with notice of the subject-matter in dispute. The rule to take depositions does not necessarily give the witness any information of the nature of the controversy. The particular facts to which his attention is called may become incidental matters in controversies which do not affect him. It does not necessarily follow that Mealy had notice of the nature and object of this suit, merely from the fact that his deposition was taken to be read in evidence; although we may have our belief that the parties made him acquainted with the nature of the controversy, we do not feel at liberty to infer it as a fact legally established.

It is true that the case of Fisher v. Lane, as reported in 3 *Wilson* 297, is occasionally cited to prove that where no notice is given to the defendant of proceedings in foreign attachment, they form no protection to the garnishee. Chancellor KENT disapproved of that decision, when delivering the opinion of the Supreme Court of New York, in Embree et al. v. Hanna, 5 *John. R.* 102. And Mr. Justice HUSTON, in delivering the opinion of this Court, in Coats v. Roberts, 4 *Rawle* 111, declared that Fisher v. Lane differed from "the prior and subsequent cases;" and he there held that "the decision of a Court of competent jurisdiction, in a proceeding *in rem*, is conclusive on all the world." But a decisive answer to the argument founded upon the case of Fisher v. Lane, is that it is misreported in 3 *Wilson* 297, and that no such principle as that supposed was ever decided in that case. The case is correctly reported in 2 *William Blackstone* 834, where the true ground of the decision against the validity of the foreign attachment appears. It was held to be invalid, not for want of *actual notice*, but for want of the *constructive notice* which the law requires. The *issuing* of a *summons* to the defendant, and a *return* of *nihil*, are indispensable to this; and for want of these requisites, the proceedings were held to be invalid and no defence to the garnishee: 2 *Wm. Bl.* 834. The case was decided in the Court of Common Pleas; and the King's Bench afterwards regarded it as not in any respect standing in the way, when the true principle was affirmed that if a *summons was issued* and *nihil returned*, the proceedings were regular and barred the action brought by the defendant in the attachment against the garnishee: McDaniel v. Hughes, 3 *East* 367. It follows that if Mealy has not already received the money due on the note, this recovery of it from the garnishee will bar his claim. But Anderson's possession of it is *prima facie* evidence of payment to the person appearing to be the owner, and authorizes

[Anderson *v.* Young's Executors.]

the presumption that it was paid to Mealy on the footing of his claim under the assignment of 22d January, 1843. It purports on its face to be a fair assignment, for a valuable consideration, and to have been made before this attachment was issued; and the receipt of the money under it is a representation that the facts thus set forth in it are true. This issue is for the very purpose of determining the truth of these representations. If the verdict finds them to be false, or establishes the fact that the assignment was made without value given for it, or was made after the attachment and ante-dated for the purpose of overreaching it, or was otherwise fraudulent and invalid, it would be *prima facie* evidence to support the garnishee's action against the witness, to recover back the money thus paid in mistake under a misrepresentation respecting the facts. If the verdict affirmed the validity of the assignment, it destroys the garnishee's cause of action, and protects the witness. In one aspect of the case, therefore, the witness would be precluded by this decision from recovering the money. In the other he might be compelled to refund it. In either he is interested to defeat the plaintiff's action, and was properly rejected.

The objection to William Price's deposition rests upon the assumption that the declarations of Cline were made *after* he had assigned the note to Foulke. But this is the very matter in dispute. If Price be believed, Cline's declarations were made *before* this assignment; for Price states that "Cline had the note in his possession at the time—that he (the witness) took it into his hand and examined it," and that he "is positive that there was no assignment on it at that time." This evidence was properly received.

The instructions given were quite as favorable to the plaintiff in error as he had a right to demand.

Judgment affirmed.