United States v. Behrens, No. 12-8084

**EBEL, J**., concurring in part and dissenting in part

I agree with the majority's conclusion that the traffic stop and subsequent detention of Mr. Behrens was justified by a reasonable articulable suspicion of unlawful activity and, therefore, lawful. I therefore concur in affirming the district court's denial of Mr. Behrens' motion to suppress. I also agree with the majority's conclusion that Mr. Behrens knowingly and intelligently waived his right to court-appointed counsel. Mr. Behrens was thoroughly advised both of the advantages of being represented by an attorney and of the dangers of proceeding pro se, and our precedent requires no more or no less. I cannot agree, however, with the majority's conclusion that Mr. Behrens' waiver was likewise voluntarily made. In the face of his attorney's unpreparedness, the record makes clear that Mr. Behrens felt he had no choice but to waive his court-appointed counsel and proceed to trial pro se. His decision to represent himself was not voluntarily made, in other words, because waiving representation by unprepared counsel was merely the lesser of two evils, and thus not truly voluntary. I must therefore dissent from the majority's conclusion that Mr. Behrens' Faretta waiver was valid.

\*

This court has long held that a defendant's decision to represent himself is not voluntary if his only other option is to proceed to trial with "incompetent or unprepared counsel." United States v. Padilla, 819 F.2d 952, 955 (10th Cir. 1987). Such a "choice", we have recognized, presents "a dilemma of constitutional magnitude," id. (internal quotation marks omitted), and is really no choice at all: the defendant must either face the

beast alone or cross his fingers and hope that his counsel's failings will not hinder his defense. In such a situation, the defendant will be caught between a rock and a hard place—somewhere between Powell v. Alabama, 287 U.S. 45 (1932) and Strickland v. Washington, 466 U.S. 668 (1984)—and no matter which option he chooses, his fundamental right to a fair trial has not been preserved. Although a pro se defendant typically "lacks both the skill and knowledge adequately to prepare his defense," Powell, 287 U.S. at 69, so too does the lawyer who fails to fulfill his "duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." Strickland, 466 U.S. 688. To put it another way, while "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts," Faretta v. California, 422 U.S. 806, 834 (1975), that presumption falls away when the defendant's court-appointed counsel is unprepared or incompetent. Under this court's precedent, then, if a defendant can demonstrate that his court-appointed counsel was incompetent or unprepared, he will have had "good cause for his dissatisfaction and his waiver of counsel [will] not be voluntary." Sanchez v. Mondragon, 858 F.2d 1462, 1467 (10th Cir. 1988), overruled on other grounds by United States v. Allen, 895 F.2d 1577 (10th Cir. 1990).

The majority does not disagree but concludes that Mr. Behrens has not shown good cause on this record that his counsel was constitutionally inadequate. Tracking language from this court's decision in Padilla, the majority argues that Mr. Behrens has not shown good cause because "[t]here was no conflict of interest, breakdown of communication, or irreconcilable conflict between Mr. Behrens and his attorney." Maj.

Op., at 8.  The lack of such factors, however, is a red herring because Padilla made clear that such factors were not exclusive, see 819 F.2d at 955, and Mr. Behrens has never contended that those particular factors motivated his decision to represent himself at trial. His argument throughout has been that his waiver was motivated by his more fundamental concern that his court-appointed counsel was not adequately prepared to mount an effective defense at trial.  This weakens much of the government's argument because, as this court recognized in Sanchez, there is an important distinction between waiving counsel because he will not "pursue a certain line of defense," which is typically not a legitimate ground for dissatisfaction, and rejecting counsel because he is "not sufficiently prepared," which is a legitimate ground for dissatisfaction.  See 858 F.2d at 1466-67.  Simply put, the reliance on Padilla is inapposite: "the issue here . . . is not legal strategy, but preparation."  Id. at 1466.

The majority comes to acknowledge this distinction, but it maintains that Mr. Behrens' attorney was not unprepared because he "was not unfamiliar with the case, as he had represented Mr. Behrens since 2010, filed the motion to suppress, and planned to call at least two witnesses to trial," see Maj. Op., at 9 (internal citations omitted).  As an initial matter, a general familiarity with a case is not the same as being prepared to take that case to trial.[1]  A more fundamental problem with the majority's analysis, however, is that it places too much weight on what Mr. Behrens' counsel did, and not enough

---

[1] To this end, the majority appears to have fallen into a similar trap as the district court did when it denied Mr. Behrens' motion to continue on the ground that his "counsel could have been prepared through the exercise of due diligence" and thus "should have been prepared to try this case for several months," see 1 R. 306-07 (emphasis added).  The question, of course, is not whether Mr. Behrens' court-appointed counsel could or should have been prepared based on his past relationship with the case, but is whether his attorney was, in fact, prepared to provide a competent and effective defense at trial.

emphasis on what he failed to do.  The gravamen of Mr. Behrens' argument is that his attorney had failed to contact a witness who was crucial to the defense's theory of the case.  If true, it is simply not relevant that Mr. Behrens' counsel was appointed in 2010, or filed a motion to suppress, or even planned to call two witnesses other than the witness who Mr. Behrens alleges his attorney failed to contact or investigate.  The only relevant questions are whether Mr. Behrens' counsel in fact failed to contact a crucial defense witness, and whether that deficient pre-trial preparation was sufficient to render Mr. Behrens' Faretta waiver involuntary.  On this record under the prevailing evidentiary rules, we must answer both questions in the affirmative; we have no choice, therefore, but to reverse and remand for a new trial.

**

Four days before his trial was set to begin, Mr. Behrens received a phone call from his attorney who relayed that he (the attorney) was not prepared for trial and wanted to know if Mr. Behrens would be willing to postpone the matter.  See 4 R. 102.  Mr. Behrens obliged, as any defendant presumably would when so informed by his counsel, and his attorney moved for a continuance, asserting that he was "currently involved in [different] multi-week, multi-defendant case" and that he thus needed "additional preparation time in order to properly represent Mr. Behrens."  1 R. 304.  Although the district court denied the continuance on the ground that Mr. Behrens' attorney "could" and "should" have been prepared for trial, it never determined that Mr. Behrens' attorney was in fact prepared to present Mr. Behrens' defense.  Not surprisingly, therefore, that order did little to allay Mr. Behrens' now well-founded fear that he was heading to trial

with counsel who had just informed him that he was not adequately prepared to present his defense.  In his next available chance to personally address the court, Mr. Behrens rose midway through voir dire and conveyed his "belie[f] that [his attorney] [wa]s not prepared for this trial whatsoever."  4 R. 101.   According to Mr. Behrens, that unpreparedness was palpable even before his attorney had admitted it: among other things, it was manifested in the fact that he had repeatedly urged Mr. Behrens to plead guilty, had forgot to bring his discovery files to their consultations on multiple occasions, and had failed to contact both his state attorney and certain witnesses that were "prominent to [his] innocence."  Id.  His attorney's unpreparedness, Mr. Behrens pleaded, "will be my downfall."  Id. at 102.

When the district court gave Mr. Behrens' attorney a chance to respond to Mr. Behrens' concerns, his attorney's colloquy exasperated rather than mitigated those concerns, as the majority suggests.  After responding that "there are things that I would like to do in this case that I, quite frankly, haven't done," he noted specifically that, "there are witnesses . . . that I haven't yet called or interviewed."  4 R. 103.  He continued, "I will do the best I can for Mr. Behrens.  But the . . . facts are that for the last two months I have been working on other matters.  And I'm going to work for Mr. Behrens, but I can understand his concerns."  Id.  When pressed by the district court to explain "what you're trying to communicate in terms of the status of Mr. Behrens' case and his ability to go forward with a fair and adequate defense," id. at 104, counsel responded, "I am going to do my best to represent him zealously and aggressively and all of that" but reiterated that "I filed the motion [to continue] like Mr. Behrens allowed me

to do, and I have nothing else . . . unless the Court has any questions for me." Id. at 104-05.

The government was then given a chance to respond, and its characterization of the situation is also telling. Recognizing the distinction between trial strategy and preparation discussed above, the prosecutor began by suggesting that district court might be misperceiving Mr. Behrens' argument: "just because Mr. Behrens and [counsel] may have strategic differences, that's not a valid complaint. But when [counsel] makes a statement that there are witnesses he wishes he could have had time to speak to, that concerns me." 4 R. 105. She continued, "[w]hether they're called or not, I don't know if that makes a difference, even if Mr. Behrens disagrees. But certainly [counsel] should have an opportunity to speak to these people to make that determination." Id. at 105-06 (emphasis added). At that point, Mr. Behrens' attorney rose once more and acknowledged that, although he and Mr. Behrens had disagreed over certain strategic matters (including whether to call particular witnesses), they agreed that "there [wa]s one [witness] that I have not contacted that I will contact." Id. at 107. When the court inquired whether that witness "was identified today," counsel responded, "No, it was a witness who was identified off and on. The importance of the witness didn't really strike me until today. And I will contact that witness tonight." Id. at 108. He continued, "the witness that I am going to contact tonight could be an important witness based on my theory of the case, and I will be contacting him tonight." Id. at 109 (emphasis added).

After both sides were given the opportunity to weigh in, the district court characterized the issue as follows, "[i]t seems as though counsel's position is to contact

the one witness to see whether that witness is an important witness to the defense, and we may hear about that later, or we may not, depending upon what that contact discloses." 4 R. 109. Despite acknowledging that some pretrial investigation still needed to be conducted, the district court held, without further explanation, "that there's no good reason, other than perhaps a dispute between client and counsel over trial strategy matters, which are soundly invested in the counsel and not the client, as to why this matter should proceed." Id. at 110. At that point, Mr. Behrens' counsel moved to withdraw, and the district court denied that motion as well, asserting, "I'm not convinced that there is an attorney within our respected Wyoming State Bar that could do a better job of advocacy." Id. The next day, Behrens asserted his right to represent himself and explicitly tied that decision to his attorney's unpreparedness: "At this point I feel that due to the fact that we could not have an extension for my attorney to prepare . . . I need to at this point go ahead and represent himself." Id. at 297.

***

In light of the on-the-record concerns that Mr. Behrens, his attorney, and even the government voiced about counsel's need to conduct additional pretrial investigation, I simply cannot agree with the majority that the record reflects that Mr. Behrens' attorney was prepared for trial. It is undisputed that counsel's preoccupation with another case prevented him from interviewing a potential defense witness. It is similarly undisputed that counsel failed even to contact that potentially important witness despite Mr. Behrens' repeated urgings to the contrary. And it is undisputed that counsel recognized that the potential witness could be crucial to, not just Mr. Behrens' theory of the case, but to his

own theory of the case. It is undisputed, in other words, that Mr. Behrens' attorney was "insufficiently prepared" to represent Mr. Behrens at trial, and for that reason, Mr. Behrens had "good cause for his dissatisfaction" and "his waiver of counsel [c]ould not be voluntary." See Sanchez, 858 F.2d 1467; accord Fisher v. Gibson, 282 F.3d 1283, 1291 (10th Cir. 2002) ("In order to make the adversarial process meaningful, counsel has a duty to investigate all reasonable lines of defense."); Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005) ("This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence.").[2]

While the majority states that the district court characterized Mr. Behrens' complaint as a mere disagreement over trial strategy, that overlooks the fact that the district court also found that Mr. Behrens' attorney still needed to "contact the one witness to see whether that witness [was] an important witness to the defense," see 4 R. 109. Although the decision to call any given witness is a matter of trial strategy, reserved to the sound discretion of a defendant's attorney, "[t]he decision to interview a potential witness is not a decision related to trial strategy. Rather, it is a decision related to

---

[2] The majority suggests that "the record reflects that counsel did have an opportunity to contact that one witness," Maj. Op., at 11 (emphasis in original), but to be clear, the record merely reflects that counsel assured the court that he intended to contact the witness. See 4 R. 108. We have no idea whether counsel in fact contacted, let alone had the time to interview, the witness because the district court never followed up on the matter at Mr. Behrens' Faretta hearing. See 4 R. 297-308. In any event, it is no answer to assert that counsel intended to contact that potentially important witness after the jury had been selected and the night before he was to present Mr. Behrens' defense. See Fisher, 282 F.3d at 1296 ("Porter's decision not to undertake substantial pretrial investigation and instead to 'investigate' the case during the trial was not only uninformed, it was patently unreasonable." (emphasis in original)).

adequate preparation for trial." Chambers v. Armontrout, 907 F.2d 825, 828 (8th Cir. 1990) (emphasis added). Indeed, one would assume it is beyond peradventure that there is nothing strategic about an attorney's failure to contact a witness who his client has repeatedly urged him to contact and who he himself recognizes could be an important witness under his theory of the case.

It is alas important to note that it was the district court, and not defense counsel, who asserted that counsel's failure to interview the potentially exculpatory witness was a matter of trial strategy. For his part, counsel made clear that his failure to investigate was not the result of a deliberate choice, let alone a grand plan, but was merely a consequence of the fact "that for the last two months [he had] been working on other matters" and "[t]he importance of the witness didn't really strike [him] until [the morning of voir dire]." 4 R. 103, 108. As someone who sits by designation at the district court from time to time myself, I sympathize with the district court's desire to move her docket along, and "[t]he prompt disposition of criminal cases is to be commended and encouraged." Powell, 287 U.S. at 59. "But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice . . . ." Id. The district court may well have been correct that Mr. Behrens' attorney could or should have been prepared for trial, but the record makes clear that he was not actually prepared to properly represent Mr. Behrens at trial.

On this record, we must credit Mr. Behrens' belief that his only hope was to represent himself rather than to proceed with unconstitutionally prepared counsel. That

negates any suggestion that he voluntarily waived his right to court-appointed counsel.

I respectfully dissent.