[LANCASTER, JUNE 1, 1829.]

ROOP *against* BRUBACKER.

APPEAL.

It is competent to prove by the oath of arbitrators, that certain matters were not examined or acted upon by them, and that consequently, they had made a mistake in their award.

The plea of payment, with leave, &c., does not admit the truth of all the averments in the *narr.* or statement.   It admits nothing but the execution of the instrument on which the suit is founded, and what is admitted by the general issue in every action.   It is a special or a general defence, as the notice given under it makes it one or the other.

Where the plaintiff removed the cause to the Circuit Court, and recovered less than one hundred dollars, and offered no evidence to prove a demand exceeding five hundred dollars, and it was apparent that under the circumstances of the case none could be offered, the court ordered the plaintiff to pay the costs.

THIS was an appeal from the decision of TOD, J., holding a Circuit Court for *Dauphin* county in *April*, 1829.

The cause was argued in the Supreme Court by *M'Clure* and *Elder*, for the plaintiff in error, who cited 1 *Phil. Ev.* 305, 306. 1 *Johns. Ch. Rep.* 276.   2 *Johns. Ch. Rep.* 260.   *Williams* v.

(Roop *v.* Brubacker.)

*Craig,* 1 *Dall.* 313.    *Buckley* v. *Ellmaker,* 13 *Serg. & Rawle,* 71.    *Schlatter* v. *Etter, Ib.* 36.    *Roth* v. *Miller,* 15 *Serg. & Rawle,* 100.

*Douglass,* for the defendant in error, referred to *Stewart* v. *Mitchell's Administrators,* 13 *Serg. & Rawle,* 287.

The case is sufficiently stated in the opinion of the court, which was delivered by

Huston, J.—*John Brubacker* had made his will and died seve-ral years ago, and appointed *Henry Brubacker* and *Christian Roop* his executors.    In his will he had devised to *Christian Roop* and wife, a part of his land, already surveyed off to him by *J. Jones,* valued at forty-five dollars per acre: to his son *Joseph,* a part ad-joining *Roop's,* and up to a certain fence, for life; and, after his death, to be sold and equally divided between his sons *Henry* and *John,* and his son-in-law, *Christian Roop:* and to his son *John* he had given the rest of his plantation lying above *Joseph's* part, valued at forty-five dollars per acre: to his son *Henry* he had given a tract of land in *Ohio,* to be appraised to him at a reasonable valua-tion, and if this tract shall amount to more than *John's* and *Chris-tian Roop's* part, then he must pay to them at the rate of twenty-five pounds yearly, to make all equal: if his amounts to less than their parts, they are to pay to him, to make all equal.

After some time, the executors having settled their accounts, and exceptions being taken to them, *Joseph* having died, and the part devised to him sold by the executors and purchased by *Henry,* and nothing yet done as to valuing the *Ohio* land, the parties agreed to refer to three men, to adjust and settle all matters in difference between the parties respecting the estate of *John Brubacker,* de-ceased, including the *Ohio* land, their several legacies, bequests, and shares, in the said estate, and all administration accounts, and in fact all and every matter and thing touching the said estate, with full power to make a final settlement, adjustment, and apportion-ment of all matters, accounts, and every matter between the par-ties touching the said will and settlement of the estate of *John Bru-backer.*    The award to be in writing and final between the parties, without appeal, and may be entered up in the Court of Common Pleas of *Dauphin* county.

The arbitrators made a full and detailed report of the accounts of the executors, finding a balance from *Henry* to the estate of four hun-dred and twenty-two dollars and eighty-two cents, and a balance to *Roop* of forty dollars and fifty-one and a half cents.    This part of the report charged *Henry Brubacker* with the land he had bought, eighty-nine and a half acres, at thirty dollars and twenty-five cents. There were other matters also in the report, not necessary to be men-tioned here, and it then proceeded:—" That *John Brubacker* and *Christian Roop,* do take the *Ohio* lands at a just and reasonable va-luation, to be fixed agreeably to the article of agreement entered

into by and between the parties on the 2nd of *September*, 1823:
That the said *John Brubacker* and *Christian Roop* give the said
*Henry Brubacker* a credit for one third part of the appraised va-
lue of the *Ohio* land:" and also contained some other matters not
necessary to be here stated.

*Christian Roop* brought this suit against *Henry Brubacker*,
and it is for debt on settled account by reference. In his statement,
he says he claims a debt due him by the defendant, on a settlement
made between them by the referees, (naming them,) and proceeds to
set out the submission and award at full length, and then avers there is
due to him one third part of the balance found in the hands of *H.
Brubacker*, being one hundred and forty-nine dollars and fifty-four
cents, and also the sum of forty dollars and fifty-one cents, and some
matters not necessary to be stated, and proceeds:—"and the fur-
ther sum of six-hundred dollars, being one third part of the value
of the *Ohio* land; which the plaintiff and *John Brubacker* were
willing and desirous to have taken at a just and reasonable valua-
tion according to the article of agreement entered into by and be-
tween the parties, dated the 2nd of *September*, 1823; and the said
plaintiff further avers, that he has often before the bringing of this
suit, requested the said *Henry Brubacker* to have the said *Ohio*
lands valued according to the aforesaid article of agreement, and
then to convey the same to him and the said *John Brubacker*, but
the said *Henry* hath always refused;" and then he states an account
of all the items of his claim, and avers them to be all due, and pro-
ceeds:—"and the said plaintiff further avers, that the said *Henry
Brubacker* has assumed, promised, and undertaken, to pay him
the said amount of nine hundred and eighty dollars and eighty-eight
cents, and interest from the 9th of *October*, 1823."

I shall not undertake to decide whether this is a statement under
our act of assembly or a declaration; or both, or neither. The de-
fendant made no objection to it and makes none now. To this the
defendant pleaded payment, with leave to give the special matter in
evidence, and gave notice in writing of all the matters which he of-
fered in evidence, and particularly of the deficiency in the quantity
of land sold to *Henry*.

On the trial the jury found for the plaintiff ninety-two dollars and
thirty cents, leaving the *Ohio* lands out of the consideration of the
jury.

There was a motion for a new trial which was overruled, and an ap-
peal to this court. The principal reasons relied on were, that the court
permitted evidence to show that *Henry Brubacker*, who was charged
with eighty-nine acres and a half of land at thirty dollars and twenty-
five cents per acre, actually got about ten acres less land, and permitted
the arbitrators to prove that they did not measure the land or consi-
der the quantity in dispute before them; that all parties before them
assumed that to be the quantity; that nothing was said about it, and
they calculated, as the award showed, on that basis; and one of the

(Roop *v.* Brubacker.)

arbitrators proved, that since the award, he had re-surveyed the land, and that the real quantity was seventy-nine acres and some perches.

This point was argued as if the judge had admitted testimony to contradict and set aside the award, and received this testimony by the oath of the arbitrators. To put the sanctity of an award on the highest ground ever assumed, it is no greater than a judgment of a court; but a judgment is not conclusive of any matter not in contest and not decided on. And in this case all that was admitted was that the quantity of land in the part sold to *Henry Brubacker,* was not in question, not disputed, and not considered as in dispute, and of course, not decided on by the arbitrators. It was then open to proof in this case, and one of the arbitrators who re-surveyed it, was as competent a witness as any other man, to prove the real quantity. The arbitrators may be examined to prove whether a matter was acted on by them, or to prove a mistake made by them. 2 *Johns. Ch. Rep.* 276.

The next objection was to the *Ohio* lands. The plaintiff relied on a right to recover as to them, because he had set out the award correctly; viz. " That *John Brubacker* and *Jacob Roop,* do take the *Ohio* land at a just and reasonable valuation, to be fixed agreeably to the articles of agreement entered into between the parties, dated the 2nd of *September,* 1823: That the said *John Brubacker* and *Christian Roop,* give the said *Henry* a credit for the one third part of the appraised value of the *Ohio* land," and had averred in the said *narr.* or statement, " that he believes there is justly due to him by the defendant, the further sum of six hundred dollars, being the one third part of the value of the *Ohio* lands which the plaintiff and *John Brubacker* were willing and desirous to have taken at a just and reasonable valuation, according to the article between the said parties, dated the 2nd of *September,* 1823; and the plaintiff avers, that he has often requested the defendant to have the said land valued according to the said article of agreement, and then to convey to the plaintiff and *John Brubacker,* but the said *Henry* has always refused." As the defendant had pleaded payment, with leave, &c., the plaintiff contended this admitted the truth of every averment in the declaration. If this were true, it would not avail him, for he has only averred that he believes the *Ohio* lands are of such value as that his one third is worth six hundred dollars; and no body ever before supposed an averment of damages for breach of covenant or promise, was any thing on which a jury could act. No testimony was given or offered respecting those lands. They were not mentioned by any witness and no document, except the will and award was before the court, in which they were even named. I do not rely on the defect of the averment, which omits to state that the plaintiff offered to choose men to value them, and offered to give *Henry* the credit, &c., but I deny totally the position that the plea of payment admits in any case any material averment, except the

(Roop *v.* Brubacker.)

execution of the paper, and except what is admitted by the general issue in every action; viz. that the plaintiff and defendant are the parties who have a right to sue, &c.

The act for defalcation, passed in 1705, gave the first legislative authority to courts of law, for exercising chancery power. It is the germ from which all the equitable power of our courts over contracts sprang: it is of daily use; and, without it or a substitute for it, the justice of half our causes could not be attained. We have a thousand adjudged cases on it; these are not exactly in terms the same, principally because when brought into consideration as to a particular question, and in a particular aspect, the expressions of judges then used, and which only relate to the case before them, are improperly considered as general, applicable to all cases, and intended so by the judge; a most fruitful source of loose argument, and often of something worse. As we find this fact alluded to, in so many cases, we often look only to the cases. The act is actually unknown, or affected to be unknown. It is a common expression, that it applies only to sealed instruments; and we have one reported case, in which it is decided there can be no set-off, and that no sum can be found in favour of a defendant under this act; whereas no sum can be found in favour of a defendant except under the express provisions of this act.

It is as follows:—

" If two or more dealing together, be indebted to each other upon bonds, bills, *bargains, promises, accounts, or the like,* and one of them commence an action in any court in this province; if the defendant cannot gainsay the deed, *bargain* or *assumption,* upon which he is sued, it shall be lawful for the defendant to plead payment of all or part of the debt or sum demanded, and give any bond, bill, *receipt, account,* or bargain in evidence; and if it shall appear," &c., and after; "but if it shall appear the plaintiff is overpaid, then they shall give their verdict for the defendant, and certify withal to the court how much they find the plaintiff to be indebted," &c.

The old cases go to extend the benefits of this act, and some of the modern ones are of the same description; *Steigleman* v. *Jeffries,* 1 *Serg. & Rawle,* 477, and *Heck* v. *Shener,* 4 *Serg. & Rawle,* 249. In 1 *Dall.* 258, M'KEAN, C. J., in an important case, in which he tells us he delivered the unanimous opinion of the court, says the plea of payment, with leave, is made the general issue by the law of this state; and further, on the plea of payment in an action on a bond, and when the issue is joined on this plea, the jury *may and ought* to presume every thing to have been paid, which *ex equo et bono,* in equity and good conscience ought not to be paid; such is the current of the determinations in the Court of Chancery in *England;* for though courts of justice cannot alter or destroy the contract of the parties, they may interfere to render it conformable to reason, justice, and conscience. It would be tedious to go through all the cases from 1 *Dall.* 17, that mistake or want

(Roop *v.* Brubacker.)

of consideration may be given in evidence under this plea. That the defendant " was unlettered," may be, or that a bond given for one purpose was used for another, 2 *Binn.* 154; that the note was given for land held under the *Connecticut* title; that it was given for tickets in an illegal lottery: in short, we have cases which meet every possible case of defence of every kind, which go to show the plaintiff ought not to recover. The plea is then a special defence or a general one, as the notice makes it one or the other. To be sure, it admits the execution of the instrument, or the having made a bargain, but nothing more. So entirely is this the case, that when the plaintiff declares on a bond or note, he can indeed read it without calling the subscribing witnesses or proving the handwriting, but the bond or note must be produced and read to the court, or its loss proved and the purport of it, or there can be no recovery; and this is, and has been the universal practice and uniform decision of every court of late, and only of late we have heard of matters being admitted by the plea of payment. This idea arose from considering what could be proved under that plea at common law, where its nature and meaning were totally different from the one attached to it under our act: under that act, it is a general issue, or it is absurd. The action against an endorser may be, perhaps ought to be, debt under the present law of this state. Payment, with leave, &c., would be a good plea: it is a usual one. The handwriting of the endorser need not be proved, but no court has yet been called on to decide that the plaintiff is not bound to prove demand of the maker, and refusal. Debt is the only action on a book account now. The statement, unless it is demanded, need not give the particular items, nor specific price of each article, but must give the date of the commencement and end of the account, and state a sum as the amount. I do not know that, although *non assumpsit* was the usual plea while the action was assumpsit, that it is so now it is changed to debt: payment with leave is the proper, or at least is a proper plea. I have not seen an attempt to recover without producing the book of original entries, and as the plaintiff must, on this plea, produce his bond or note, the lawyer who would direct his client to go to trial without any evidence, would not succeed. In *Schlatter* v. *Etter*, 13 *Serg. & Rawle*, 36, something on this subject will be found. The abstract of the case is not fully correct. That the plea of payment, with leave, to a statement, does not admit any fact not mentioned in the statement; if essential, the plaintiff must prove it, is true: but the case decided more than that. It was a suit for the difference between certain country notes paid by the defendant to the plaintiff, and city notes; and the statement did aver an agreement by the defendant to pay this difference, provided it did not exceed ten per cent., and he produced the defendant's agreement in writing, expressly to this effect, and he expressly averred " that the discount and difference in exchange on the above notes, amounted to two hundred and eleven dollars and eighty-four cents, being

(Roop *v.* Brubacker.)

eight per cent.: that thirty-five dollars in part had been paid by the defendant, but that one hundred and seventy-six dollars and eighty-four cents remained due," &c.; and the decision was, that the plaintiff could not recover without proving that the notes paid in, were not at par, and without proving what was the actual discount. I am not aware that any possible plea would have enabled the plaintiff to obtain a verdict in this case as to the *Ohio* lands, without some proof of their value, and also some evidence as to an attempt by the plaintiff at an offer to have them valued.

In 15 *Serg. & Rawle,* 105, 106, DUNCAN, J., says, in speaking of this plea, which had been put into a bond of indemnity, " What I understand by this is, that it puts *every thing in issue contained* in the notice of defence which protects the defendant, but it admits the execution of the deed set out, and the conditions expressed in it."

To make the most of it, a plea may admit a contract as set out, but if the suit is for damages for non-performance of that contract, the damages must be proved, or a jury give nominal damages. I am not aware that it was ever before contended that any plea admitted the averment of damages, for breach of an agreement to be as set out, unless where the amount was part of the agreement. There was then no error in this direction to the jury, that as no evidence had been given relative to the *Ohio* lands or the value of them, they could not undertake to decide on their value, especially in this action *on a settled account.*

By the 19th section of the act of the 2nd of *April,* 1803, no cause shall be removed from any Court of Common Pleas to the Circuit Court, unless the plaintiff's demand or the value of the controversy between the parties, shall exceed the sum of five hundred dollars; and the next section directs that the court wherein the said action shall be tried, shall have power to make the party that removed the same pay the costs of suit, if in the opinion of the said court, the action shall have been removed without a reasonable foundation of its being within the true spirit of and meaning of the aforesaid section.

The plaintiff removed this cause and recovered less than one hundred dollars, and gave no evidence or offered no evidence to prove, any demand exceeding five hundred dollars; and as further it is not apparent, how under that award, and in this suit, any such evidence could be offered, the court ordered and adjudged the plaintiff to pay the costs. In this there was no mistake. The Circuit Court sits in each county but once a year. The legislature intended its time should not be occupied by trifling demands; the law requires a certificate of the counsel who removes it, that he verily believes it is within the true spirit and meaning of the act: it cannot be permitted to evade the law by inserting in the *narr.* or statement, a matter which cannot be or is not intended to be tried, and thus raise the demand beyond five hundred dollars. Aware that causes might be removed without minute investigation of the amount really claimed, this penalty was intrusted to the court, and will be applied in all proper cases.                                   Judgment affirmed.