FILED
United States Court of Appeals
Tenth Circuit

April 10, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN WARRENER,

      Petitioner - Appellant,

v.

ANGEL MEDINA; THE ATTORNEY
GENERAL OF THE STATE OF
COLORADO,

      Respondents - Appellees.

No. 11-1564
(D.C. No. 1:11-CV-00019-CMA)
(D. Colo.)

**ORDER
DENYING CERTIFICATE OF APPEALABILITY**

Before **KELLY**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

John Warrener, a state inmate appearing pro se, seeks to appeal from the

district court's dismissal with prejudice of his habeas petition. 28 U.S.C. § 2254.

He asserts violations of his Fifth, Sixth, and Fourteenth Amendment rights. To

appeal, Mr. Warrener needs a certificate of appealability ("COA") which requires

"a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). Under this standard, he must show "that reasonable jurists could

debate whether (or, for that matter, agree that) the petition should have been

resolved in a different manner or that the issues presented were adequate to

deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473,

484 (2000) (internal quotations omitted).  Finding these showings lacking, we deny a COA and dismiss the appeal.

## Background

Mr. Warrener and the victim in this case began an intimate relationship in 2001.  See Warrener v. Medina, No.11-cv-00019-CMA, 2011 WL 5984082, at *1 (D. Colo. Nov. 30, 2011) (hereinafter "Order").  In June 2004, the victim's family called police and requested a welfare-check on the victim because they had not been able to reach her by telephone.  Id.  When the police arrived at her home, they knocked on the door but received no response.  While seeking entry via apartment management personnel, police observed Mr. Warrener inside of the apartment and ordered him to come outside.  Instead, Mr. Warrener jumped out of a window and fled.  Id.  Police apprehended him, handcuffed him, and then asked whether the victim was dead or alive.  Id. at *5.  Mr. Warrener shrugged.  When another officer asked if the victim was okay, he replied, "I think she's dead."  Id. Upon entering the apartment, police found the victim's body on her bed, wrapped in plastic.  She died from multiple stab wounds.  Id. at *1.

Mr. Warrener was convicted of first degree murder—after deliberation, felony murder, and second degree robbery.  The state appellate court vacated his conviction for felony murder, holding that only one murder conviction could be entered for the homicide.  People v. Warrener, No. 05CA1850, 2008 WL 1970845

(Colo. App. May 8, 2008) (unpublished); R. 167 (hereinafter "Warrener I"). He was sentenced to life without parole, with a concurrent sentence of twenty-four years for burglary. Order at *1. He exhausted both state direct and post-conviction review for all claims before this court, and his petition was timely pursuant to 28 U.S.C. § 2244. Id. at *1, *4. The district court dismissed his petition with prejudice on November 30, 2011. Id. at *16.

Discussion

In deciding whether to grant a COA, we must also consider the standard of review that would be applied to a merits disposition. We must defer to state court proceedings on the issues unless those proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Moreover, factual findings made by state courts are presumed correct unless the presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). We consider Mr. Warrener's constitutional claims in turn.

A.    Sixth Amendment Claims

First, Mr. Warrener claims that his Sixth Amendment rights were violated when the state court admitted testimony of the victim through a police officer

who interviewed her after a prior domestic violence dispute. Aplt. Br. 3-3(b). According to the police officer, the victim called the police after Mr. Warrener pushed her during an argument and she hit her head on a towel rack. See Order at *10. The trial court held that "because [Mr. Warrener] pled guilty to harassment and domestic violence based on the prior incident, he knowingly, voluntarily and intelligently waived his right to confront and cross-examine the victim with respect to her hearsay statements for purposes of the pending murder charges." Id. at *11. The state appellate court determined that the hearsay was admitted in error, but that the error was harmless beyond a reasonable doubt. See Warrener I; R. 167, 189.

Of course, on federal collateral review, the reviewing court evaluates harmless error based upon whether the error had a substantial and injurious effect upon the verdict rather than the standard employed by the state court. Fry v. Pliler, 551 U.S. 112, 121-22 (2007); Welch v. Workman, 639 F.3d 980, 992 (10th Cir. 2011). Accepting as true the state court's holding that the admission was constitutional error, the district court came to the correct result, even if it applied the more generous standard—harmless beyond a reasonable doubt—employed by the state court. The officer's testimony was harmless based on the volume of inculpatory evidence presented against Mr. Warrener at trial. See Order at *6,

*11.[1]  Mr. Warrener's argument that the Supreme Court's holding in <u>Giles v. California</u>, 554 U.S. 353 (2008), somehow changes the outcome is not reasonably debatable.  Aplt. Br. 3-3(b).  <u>Giles</u> held that the admission of a victim's statements from a prior domestic violence incident at the murder trial of the defendant violated his right to confront witnesses as outlined in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).  <u>See</u> <u>Giles</u>, 554 U.S. at 356-57, 377.  Here, the admission was assumed improper, yet there was no grave doubt about the effect of the error on the verdict.  Therefore, <u>Giles</u> does not change the outcome of Mr.

---

[1]As the district court noted:

> At Applicant's trial, police officers testified that they entered the victim's apartment in response to a welfare check call placed by the victim's father, minutes after the Applicant fled the apartment through a window, and found the victim's body inside a bedroom, wrapped in plastic and covered with a sheet.  Baby powder was spread over the victim's body.  The victim had suffered stab wounds to her chest and back and had defensive injuries to her hands.  Police found clothing and bedding in the washing machine and a knife in the kitchen sink.  Baby powder seized from the apartment bore the Applicant's fingerprints.  A large area of blood on the carpet in the bedroom where the victim was found was covered in detergent.  Applicant's fingerprints were found on a carpet cleaning machine that also contained the victim's blood.  Applicant's cell mate during his pretrial detention testified that Applicant confessed the following details about the crime, which largely corroborate the other evidence presented at Applicant's trial: he killed a woman named "Karen" who he had been seeing romantically with a big knife he found in her kitchen and placed her body in plastic bags; he then cleaned the knife and the apartment with cleaning supplies and tried to escape through a bathroom window when the police arrived at the front door.

Order at *6.

Warrener's case.

B.    Fifth Amendment Claims

Next, Mr. Warrener argues that his Fifth Amendment right was violated when officers asked him questions about the victim's condition at the scene of the crime before reading him his Miranda rights.  Aplt. Br. 3(b)-3(d).  The district court agreed with the state court that Mr. Warrener "was not subject to an interrogation, and, therefore, no Miranda advisement was required . . . ."  Order at *5.  The district court continued, however, that "even if the admission of [Mr. Warrener's] statements to the police at trial violated his Fifth Amendment rights, [he] is not entitled to federal habeas relief unless the constitutional error had a 'substantial and injurious effect or influence' on the jury's verdict."  Id. at *6 (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  The district court's conclusion is not reasonably debatable.  Notwithstanding any Fifth Amendment violation, based on the overwhelming evidence presented against Mr. Warrener, any constitutional violation did not result in "actual prejudice."  Brecht, 507 U.S. at 637; see also Order at *6; supra n.1.

C.    Failure to Require Competency Evaluation

In his third claim, Mr. Warrener asserts that his due process rights under the Fourteenth Amendment were violated when the trial court did not evaluate his competence to stand trial.  Aplt. Br. 3(d)-3(e).  He states that a trial court is required to administer "a mental competency evaluation if there is reason to

believe the defendant is mentally incompetent." Id. at 3(d); see Pate v. Robinson, 383 U.S. 375, 385 (1966). The question to consider is "whether the trial court 'fail[ed] to give proper weight to the information suggesting incompetence which came to light during trial.'" McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001) (quoting Drope v. Missouri, 420 U.S. 162, 179 (1975)) (alteration in McGregor).

In McGregor, this court held that the petitioner's procedural due process rights were violated because a "reasonable judge should have had a bona fide doubt concerning [petitioner's] continued competency to stand trial in light of the inconsistent evidence concerning whether [he] was properly medicated throughout trial, counsel's repeated and vehement contentions that his client was unable to assist in his own defense, [his] odd behavior at trial and . . . [his] substantial history of mental illness." McGregor, 248 F.3d at 955. In that case, petitioner had a documented history of serious mental illness, changed medications during trial, exhibited unusual behavior during trial—including throwing a temper tantrum because his shirt did not have a pocket, complaining of mental problems, and challenging jurors to "one on one" basketball games—and there were repeated assertions by his counsel that he was incompetent on the record throughout trial. Id. at 955-62.

Here, Mr. Warrener's counsel made the court aware that he was taking medication. 13 Trial Trans. 113. The court spoke directly to Mr. Warrener about

this, however, and his responses satisfied the court that he was competent and

could waive his right to testify.[2]  There were no outbursts during trial, as in

---

[2]The record states:

Q [Court]: Now, when you say—you just said that Mr. Warrener is actually under the influence of certain medications. What I want to find out is again, and maybe I'd better inquire, I don't want that staining on the record here. Mr. Warrener, I understand that you've taken some medications that you've identified earlier; is that right?

A [Mr. Warrener]: Yes, sir.

Q: Do you feel that either of those drugs, and perhaps in combination that you've taken, are interfering with your thinking process, your thought process?

A: It's possible.  I'm not sure.

Q: Well, before you told me that even though you were taking those drugs—

A: I don't believe so.

Q: Pardon me?

A: I don't believe that they are.

Q: Okay. Well are you having any trouble or difficulty understanding what I'm saying to you?

A: No, sir.

Q: And when I went through before and read to you your right to choose to testify, you told me you understood that, correct?

A: Yes, sir.

Q: Do you have any other questions you want to ask me about the right to choose to testify?

McGregor, and counsel presented no evidence of incompetency during trial, other than discussing his medications.  See Order at *10.  Therefore, the district court's holding that defense counsel did not indicate that Mr. Warrener was incompetent

A: No, sir.

13 Trial Tr. 113-14.  The court continued:

> Q [Court]: Okay. Now, understand again as I've said, this is a stressful time and a stressful decision, but it's a decision you have to make. Do you understand that?
>
> A [Mr. Warrener]: Yes. Yes, sir.
>
> Q: Do you at this time feel that in any way because of the medication, the Geodon or the Wellbutrin that you're just unable to make this decision?
>
> A: No, sir.
>
> Q: Okay. So you feel that notwithstanding taking these medications that are treating these conditions, you understand what you're doing, correct?
>
> A: Yes, sir.
>
> Q: And you're making a voluntary decision; is that right?
>
> A: Yes, sir.
>
> Q: And you have no other questions about your right to choose to testify or not to testify, correct?
>
> A: No, sir.
>
> Q: Okay. Thank you.

Id. at 117-18.

under Colorado law, and that his statements to the court did not raise questions of competency, are not reasonably debatable.  Id.

D.     Failure to Instruct on Lesser Included Offense

Mr. Warrener argues that the state court violated his Fourteenth Amendment due process rights when the court did not instruct the jury on Colorado's heat of passion mitigator to second degree murder.  Aplt. Br. 3(e)-3(f).  As this circuit has noted, "[t]he Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases, see Beck v. Alabama, 447 U.S. 625, 638 n. 14 (1980), and neither has this court."  Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004).  We continued, "[o]ur precedents establish a rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction."  Id.  The state court reasoned that any failure to give a heat of passion instruction was harmless error given the conviction on the greater offense of first degree murder.  Warrener I; R. 167, 194.  This claim is not reasonably debatable given the lack of a clearly established federal right.  See 28 U.S.C. § 2254(d)(1); House v. Hatch, 527 F.3d 1010, 1015 (10th Cir. 2008).

E.     Ineffective Assistance of Counsel

Finally, Mr. Warrener claims that his Sixth Amendment right to effective assistance of counsel was violated when counsel failed to seek a voluntary intoxication instruction as a defense to first degree murder and failed to present

an insanity defense. Aplt. Br. 3(f)-3(k). In order to prevail on an ineffective assistance of counsel claim, Mr. Warrener must show that (1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). As we have explained, "[t]o be deficient, the performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong." Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011). The state courts resolved these claims on lack of deficient performance; the decision on voluntary intoxication was strategic and based on a lack of supporting evidence; the decision on the insanity defense was based on a lack of supporting evidence. 1 R. 308, 312-16. Accordingly, the representation fell "within a 'wide range' of reasonable professional assistance." United States v. Rushin, 642 F.3d 1299, 1306 (10th Cir. 2011). These conclusions, in light of the deference afforded, are not reasonably debatable.

We DENY a COA, DENY IFP status and DISMISS this appeal.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

- 11 -