FILED
United States Court of Appeals
Tenth Circuit

March 11, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff - Appellee, v. ERIC BEHRENS, Defendant - Appellant. | Nos. 12-8084 and 13-8008 (D.C. No. 2:10-CR-00280-NDF-1) (D. Wyo.) |

ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Judge, **EBEL**, and **KELLY**, Circuit Judges.

After a jury trial, Eric Behrens was convicted on one count of conspiracy to possess with intent to distribute and to distribute methamphetamine, 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and one count of possession with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), (b)(1)(C). He was sentenced to 240 months' imprisonment on each count, to run concurrently, and supervised release of ten years on the first count and six years on the second, also to run concurrently. He appeals his conviction, arguing that the district court erred in

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

denying his motion to suppress and that his waiver of the right to counsel was invalid. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

A.    The Traffic Stop

On August 29, 2010, a Minnesota State Trooper observed Mr. Behrens driving a vehicle that appeared to have no rear license plate. 1 R. 69, 71. The trooper initiated a traffic stop, and after exiting his patrol car and walking toward Mr. Behrens' vehicle saw a temporary registration tag from Wyoming in the rear window. 1 R. 69-70. The trooper noticed the tag was extremely faded, torn and tattered, but the expiration date was written in bold marker and was not faded. 1 Supp. R. 29-30. The trooper later testified that in Minnesota temporary tags are "made to fade," so that when they expire they are "almost unreadable" and easy for law enforcement to identify. 1 Supp. R. 40-41. The trooper noticed that the temporary tag was registered to "Leslie Healy," and that the driver of the vehicle, Mr. Behrens, was male. 1 Supp. R. 29-30. The trooper also noticed that the tag appeared to be valid for 90 days, which he testified was longer than any period of validity he had ever seen. 1. Supp. R. 30. The trooper testified that he suspected the tag was fake or had been altered, or the vehicle stolen. 1 Supp. R. 36.

After questioning Mr. Behrens and receiving less than satisfactory answers, the trooper arrested him and obtained a warrant to search the vehicle (which Mr.

Behrens does not challenge). 1 R. 71. The search resulted in the seizure of 160 grams of methamphetamine. Id.

Mr. Behrens moved before trial to suppress all evidence seized as a result of the search of his vehicle. 1 R. 56-57. The district court denied his motion, finding no dispute that the traffic stop was reasonable at its inception, and that the trooper had reasonable suspicion to detain and investigate Mr. Behrens. 1 R. 75-77. The case proceeded toward trial.

B.     Mr. Behrens Waives His Right to Counsel

On November 3, 2011, Mr. Behrens filed a motion to continue his trial, set to begin four days later, asserting that his attorney was unprepared to try the case and had been busy with another client's six-week jury trial. 1 R. 301. The district court denied the motion, noting that Mr. Behrens' trial had been continued multiple times before, and that counsel should have been prepared to try the case by the previous trial date, August 29, 2011. 1 R. 305-07.

On the opening day of trial, Mr. Behrens addressed the court and reiterated his concern that his attorney was unprepared. 4 R. 101-02. He asserted that he (Mr. Behrens) had not had adequate time to review discovery materials, that his attorney had not prepared a witness list to his satisfaction, that his attorney had not identified experts to call, and that his attorney's ineffectiveness would "be [his] downfall." 4 R. 101-02. The attorney responded, "[T]here are things that I would like to do in this case that I, quite frankly, haven't done, and there are

witnesses that . . . I may still try and call that I haven't yet called or interviewed." 4 R. 103. When pressed by the court ("I don't quite know what you're trying to communicate"), the attorney continued: "[E]very lawyer wants more time. That's just the nature of the beast . . . . I have worked hard in [Mr. Behrens'] case. . . . I am going to do my best to represent him zealously and aggressively and all of that for the next five or six days." 4 R. 104. After comments from the government, Mr. Behrens' attorney elaborated once more:

> The witnesses that Mr. Behrens would like me to contact and to work on are witnesses that, as the attorney making the decision in the matter . . . I wouldn't contact them . . . . I do give my clients a great deal of autonomy. So if it were up to me, I wouldn't call the witnesses . . . . If I sit here and I were to make the call as to what witnesses I would talk to or deal with or try to put on, there is one that I have not contacted that I will contact. The rest of them are people that he would like me to contact and put on, and I wouldn't ordinarily be inclined to do so . . . .

4 R. 106-07. When asked about the "one" witness, the attorney responded, "[I]t was a witness who was identified off and on. The importance of the witness didn't really strike me until today. And I will contact that witness tonight." 4 R. 108.

The court concluded that there had been adequate time for preparation, that the matters Mr. Behrens took issue with were "strategic matters," and that the trial would proceed. 4 R. 109-10. Mr. Behrens then asked for a new lawyer, and his attorney moved to withdraw. 4 R. 110. The court denied the motion, and Mr.

- 4 -

Behrens, distraught, explained that a witness whose testimony he believed would prove exculpatory was not being called. 4 R. 111. The proceedings continued.

After jury selection, Mr. Behrens asserted his right to proceed without counsel, stating that he was "the only one at this point qualified to represent my life on the line." 4 R. 295, 297. The court then questioned Mr. Behrens about his decision to ensure it was knowing and voluntary. The court asked Mr. Behrens if he had studied law, which he had not. 4 R. 297-98. The court then conducted a colloquy about the charges, potential penalties involved, and the risks and consequences of self-representation. 4 R. 298-303. Mr. Behrens was advised to reconsider his decision, but he did not relent. 4 R. 303-05. After confirming that his decision was knowing and voluntary, the court appointed Mr. Behrens' attorney as stand-by counsel. 4 R. 308. In a written order, the district court found that Mr. Behrens' request for self-representation was unequivocal, timely, and knowing and intelligent. 1 R. 311-14. Mr. Behrens was convicted on two of three charges, and this appeal followed.

## Discussion

A.    Reasonableness of the Traffic Stop

In reviewing the denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous and view the evidence in the light most favorable to the government. United States v. Trestyn, 646 F.3d 732,

741 (10th Cir. 2011). The ultimate determination of Fourth Amendment reasonableness is a question of law we review de novo. Id.

A traffic stop is a "seizure" under the Fourth Amendment and is analyzed under the framework set out in Terry v. Ohio, 392 U.S. 1 (1968), for investigative detentions. Trestyn, 646 F.3d at 741-42. That framework requires a stop to be justified by objectively reasonable suspicion that the person detained has committed or is about to commit a crime. United States v. De La Cruz, 703 F.3d 1193, 1196 (10th Cir. 2013). We look first to whether the detention was justified at its inception, and second to whether the detention was "reasonably related in scope" to the circumstances justifying it. Trestyn, 646 F.3d at 742. Once an officer determines that a traffic violation has not occurred, the driver must be allowed to proceed without further delay. Id.

Mr. Behrens does not challenge the reasonableness of the stop at its inception. Aplt. Br. 20. Instead, he argues that the stop became unreasonable when the trooper's suspicions should have been dispelled—i.e., when the trooper saw that the car had a valid temporary tag in its rear window and learned that the tag was validly registered to Leslie Healy. Id. at 20, 23.

We cannot agree. Mr. Behrens is correct that continued detention violates the Fourth Amendment when an officer's suspicions are dispelled, and that we have more than once found as much in cases involving temporary registration tags or missing license plates. See Trestyn, 646 F.3d at 743-44; United States v. Pena-

Montes, 589 F.3d 1048, 1054-55 (10th Cir. 2009); United States v. Edgerton, 438 F.3d 1043, 1051 (10th Cir. 2006); United States v. McSwain, 29 F.3d 558, 561 (10th Cir. 1994). But, given the district court's factual findings, the trooper's suspicion of a fraudulent temporary tag was not reasonably dispelled in these circumstances. The court credited the trooper's testimony about his observations of the tag, its condition, and his experience with faded tags being illegally reused. 1 R. 75-76. As such, the trooper had a "particularized and objective basis for suspecting" that the temporary tag was a fake, or that the car was stolen. See United States v. Winder, 557 F.3d 1129, 1133 (10th Cir. 2009) (quoting United States v. Cortez, 449 U.S. 411, 417-418 (1981)) (internal quotation marks omitted). The registration to Leslie Healy was not enough to dispel the trooper's suspicion, and he was justified in questioning Mr. Behrens to determine if he was Healy, or at least had some connection with Healy. Accordingly, continued detention and investigation was reasonable under the Fourth Amendment.

B.    Waiver of the Right to Counsel

We review the validity of a waiver of the right to counsel de novo and the underlying factual findings for clear error. United States v. Turner, 287 F.3d 980, 983 (10th Cir. 2002). A trial court must be satisfied of three factors before allowing a criminal defendant to exercise his right to proceed pro se: the defendant must voluntarily assert his right to represent himself; the waiver must be knowing and intelligent; and the waiver must be timely. Id.

Mr. Behrens presents two theories as to why his waiver was invalid. First he argues that his waiver was not voluntary because he was forced to choose between appearing pro se or proceeding with unprepared counsel. Aplt. Br. 26-29. He also argues that his waiver was not "knowing and intelligent" because the district court failed to inform him of the nature of the conspiracy charge and possible defenses. Id. at 29-32. We address each theory in turn.

"A defendant forced to choose between incompetent or unprepared counsel and appearing pro se faces 'a dilemma of constitutional magnitude.'" United States v. Padilla, 819 F.2d 952, 955 (10th Cir. 1987) (quoting Maynard v. Meachum, 545 F.2d 273, 278 (1st Cir. 1976)). Thus, a waiver of the right to counsel is not voluntary if the defendant shows that he was entitled to a substitution of counsel. Id. To be entitled to new counsel, "the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." Id. (quoting McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981)).

Mr. Behrens was not entitled to substitute counsel. There was no conflict of interest, breakdown of communication, or irreconcilable conflict between Mr. Behrens and his attorney. And while these grounds for substitution are not exhaustive, their absence supports the district court's finding that Mr. Behrens' concerns were primarily strategic; and counsel's refusal to structure a defense precisely as the defendant directs is not good cause for substitution of counsel.

Id. at 956. Mr. Behrens's case is analogous to Padilla, in which we held the defendant's complaint that his attorney refused to pursue a particular defense theory was insufficient to warrant substitute counsel, and thus his decision to proceed pro se was voluntary. Id. at 955-56.

We have, however, distinguished in this context between complaints about legal strategy and complaints about preparation. Sanchez v. Mondragon, 858 F.2d 1462, 1466 (10th Cir. 1988), overruled on other grounds by United States v. Allen, 895 F.2d 1577 (10th Cir. 1990). But while Mr. Behrens complained extensively of his attorney's lack of preparation, and the attorney asserted he had been preoccupied with other matters, the record does not reflect that he was incapable of providing effective representation. The district court inquired into the details of Mr. Behrens' complaint as it was required to do. See United States v. Silkwood, 893 F.2d 245, 248 (10th Cir. 1989). The exchange that followed indicates that the attorney would have provided constitutionally adequate representation, notwithstanding the disagreement on some aspects of trial strategy and his request for more time to accommodate Mr. Behrens' requests (with which, in his professional judgment, he did not agree). Counsel was not unfamiliar with the case, as he had represented Mr. Behrens since 2010, 1 R. 36, filed the motion to suppress, 1 R. 56-57, and planned to call at least two witnesses at trial, 4 R. 134-35. As the dissent notes, the primary evidence of counsel's claimed unpreparedness is that he had yet to contact one witness whose importance he had

not yet realized. Whether this delayed realization was the result of devoting time to other matters or his own misapprehension is not clear. But the record reflects that counsel *did* have an opportunity to contact that one witness, albeit at the last minute. 4 R. 108. In the reality of trial and uncertain proof, it is not unheard of to contact witnesses during the proceedings, as realizations such as this are made. In our view, counsel could have provided reasonably effective assistance to Mr. Behrens. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

Although Mr. Behrens was dissatisfied with his attorney, he does not have an absolute right to counsel of his choice, nor a right to have counsel follow his instructions to the letter. Padilla, 819 F.2d at 956. Because he had the choice of retaining present and competent counsel, Mr. Behrens' decision to proceed pro se was voluntary. See id. at 955.

Next, Mr. Behrens argues that his waiver was not "knowing and intelligent." A waiver is knowing and intelligent if the defendant "was reasonably informed by the court of the hazards of self-representation and had sufficient understanding of those hazards." Turner, 287 F.3d at 984. It is the responsibility of the trial judge to ensure that a waiver is knowing and intelligent. Id. at 983. The judge must ensure that the defendant understands "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the

whole matter." Von Moltke v. Gillies, 332 U.S. 708, 724 (1948).

Mr. Behrens asserts that because the district court failed to discuss the nature of his conspiracy charge or any possible defenses with him, his waiver cannot be knowing and intelligent. But we have described the Von Moltke factors listed above as an ideal inquiry, United States v. Willie, 941 F.2d 1384, 1388 (10th Cir. 1991), and have stated that no precise litany of questions must be asked of a defendant seeking to waive the right to counsel, Turner, 287 F.3d at 983. The relevant inquiry focuses on whether the defendant was "aware of the dangers and disadvantages of self-representation," considering the record as a whole. See Faretta v. California, 422 U.S. 806, 835 (1975); United States v. DeShazer, 554 F.3d 1281, 1288 (10th Cir. 2009).

Having reviewed the record, we are satisfied that Mr. Behrens was aware of the nature of the charges against him and the consequences of his decision to proceed without counsel. While the district court did not suggest any defenses, its failure to discuss that issue on the record does not warrant reversal because the surrounding facts and circumstances indicate that Mr. Behrens understood his rights and the risk he was taking. See Willie, 941 F.2d at 1388-89. The same is true of the district court's explanation of the conspiracy charge. We note that Mr. Behrens had previously pled guilty to both the conspiracy and one possession charge (later withdrawn), and acknowledged that he understood the nature and elements of both crimes. 2 R. 26. When he entered that plea, the court explained

the elements of each crime.  4 R. 1323-24.  As the case progressed to trial, the court none too strongly and repeatedly informed Mr. Behrens of the dangers of self-representation.  The court followed a model set of questions in its colloquy with Mr. Behrens, <u>see</u> Fed. Judicial Ctr., Benchbook for U.S. District Court Judges 6-7 (6th ed. 2013),  and then it allowed him to make his choice.  4 R. 298-308.  We find that Mr. Behrens' waiver of the right to counsel was knowing and intelligent.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

United States v. Behrens, No. 12-8084

**EBEL, J**., concurring in part and dissenting in part

I agree with the majority's conclusion that the traffic stop and subsequent detention of Mr. Behrens was justified by a reasonable articulable suspicion of unlawful activity and, therefore, lawful. I therefore concur in affirming the district court's denial of Mr. Behrens' motion to suppress. I also agree with the majority's conclusion that Mr. Behrens knowingly and intelligently waived his right to court-appointed counsel. Mr. Behrens was thoroughly advised both of the advantages of being represented by an attorney and of the dangers of proceeding pro se, and our precedent requires no more or no less. I cannot agree, however, with the majority's conclusion that Mr. Behrens' waiver was likewise voluntarily made. In the face of his attorney's unpreparedness, the record makes clear that Mr. Behrens felt he had no choice but to waive his court-appointed counsel and proceed to trial pro se. His decision to represent himself was not voluntarily made, in other words, because waiving representation by unprepared counsel was merely the lesser of two evils, and thus not truly voluntary. I must therefore dissent from the majority's conclusion that Mr. Behrens' Faretta waiver was valid.

*

This court has long held that a defendant's decision to represent himself is not voluntary if his only other option is to proceed to trial with "incompetent or unprepared counsel." United States v. Padilla, 819 F.2d 952, 955 (10th Cir. 1987). Such a "choice", we have recognized, presents "a dilemma of constitutional magnitude," id. (internal quotation marks omitted), and is really no choice at all: the defendant must either face the

beast alone or cross his fingers and hope that his counsel's failings will not hinder his defense. In such a situation, the defendant will be caught between a rock and a hard place—somewhere between Powell v. Alabama, 287 U.S. 45 (1932) and Strickland v. Washington, 466 U.S. 668 (1984)—and no matter which option he chooses, his fundamental right to a fair trial has not been preserved. Although a pro se defendant typically "lacks both the skill and knowledge adequately to prepare his defense," Powell, 287 U.S. at 69, so too does the lawyer who fails to fulfill his "duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." Strickland, 466 U.S. 688. To put it another way, while "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts," Faretta v. California, 422 U.S. 806, 834 (1975), that presumption falls away when the defendant's court-appointed counsel is unprepared or incompetent. Under this court's precedent, then, if a defendant can demonstrate that his court-appointed counsel was incompetent or unprepared, he will have had "good cause for his dissatisfaction and his waiver of counsel [will] not be voluntary." Sanchez v. Mondragon, 858 F.2d 1462, 1467 (10th Cir. 1988), overruled on other grounds by United States v. Allen, 895 F.2d 1577 (10th Cir. 1990).

The majority does not disagree but concludes that Mr. Behrens has not shown good cause on this record that his counsel was constitutionally inadequate. Tracking language from this court's decision in Padilla, the majority argues that Mr. Behrens has not shown good cause because "[t]here was no conflict of interest, breakdown of communication, or irreconcilable conflict between Mr. Behrens and his attorney." Maj.

<u>Op.</u>, at 8. The lack of such factors, however, is a red herring because <u>Padilla</u> made clear that such factors were not exclusive, <u>see</u> 819 F.2d at 955, and Mr. Behrens has never contended that those particular factors motivated his decision to represent himself at trial. His argument throughout has been that his waiver was motivated by his more fundamental concern that his court-appointed counsel was not adequately <u>prepared</u> to mount an effective defense at trial. This weakens much of the government's argument because, as this court recognized in <u>Sanchez</u>, there is an important distinction between waiving counsel because he will not "pursue a certain line of defense," which is typically not a legitimate ground for dissatisfaction, and rejecting counsel because he is "not sufficiently prepared," which is a legitimate ground for dissatisfaction. <u>See</u> 858 F.2d at 1466-67. Simply put, the reliance on <u>Padilla</u> is inapposite: "the issue here . . . is not legal strategy, but preparation." <u>Id.</u> at 1466.

The majority comes to acknowledge this distinction, but it maintains that Mr. Behrens' attorney was not unprepared because he "was not unfamiliar with the case, as he had represented Mr. Behrens since 2010, filed the motion to suppress, and planned to call at least two witnesses to trial," <u>see</u> Maj. Op., at 9 (internal citations omitted). As an initial matter, a general familiarity with a case is not the same as being prepared to take that case to trial.[1] A more fundamental problem with the majority's analysis, however, is that it places too much weight on what Mr. Behrens' counsel did, and not enough

---

[1] To this end, the majority appears to have fallen into a similar trap as the district court did when it denied Mr. Behrens' motion to continue on the ground that his "counsel <u>could have been prepared</u> through the exercise of due diligence" and thus "<u>should have been prepared</u> to try this case for several months," <u>see</u> 1 R. 306-07 (emphasis added). The question, of course, is not whether Mr. Behrens' court-appointed counsel could or should have been prepared based on his past relationship with the case, but is whether his attorney was, in fact, prepared to provide a competent and effective defense at trial.

emphasis on what he failed to do. The gravamen of Mr. Behrens' argument is that his attorney had failed to contact a witness who was crucial to the defense's theory of the case. If true, it is simply not relevant that Mr. Behrens' counsel was appointed in 2010, or filed a motion to suppress, or even planned to call two witnesses other than the witness who Mr. Behrens alleges his attorney failed to contact or investigate. The only relevant questions are whether Mr. Behrens' counsel in fact failed to contact a crucial defense witness, and whether that deficient pre-trial preparation was sufficient to render Mr. Behrens' <u>Faretta</u> waiver involuntary. On this record under the prevailing evidentiary rules, we must answer both questions in the affirmative; we have no choice, therefore, but to reverse and remand for a new trial.

**

Four days before his trial was set to begin, Mr. Behrens received a phone call from his attorney who relayed that he (the attorney) was not prepared for trial and wanted to know if Mr. Behrens would be willing to postpone the matter. <u>See</u> 4 R. 102. Mr. Behrens obliged, as any defendant presumably would when so informed by his counsel, and his attorney moved for a continuance, asserting that he was "currently involved in [different] multi-week, multi-defendant case" and that he thus needed "additional preparation time in order to properly represent Mr. Behrens." 1 R. 304. Although the district court denied the continuance on the ground that Mr. Behrens' attorney "could" and "should" have been prepared for trial, it never determined that Mr. Behrens' attorney was in fact prepared to present Mr. Behrens' defense. Not surprisingly, therefore, that order did little to allay Mr. Behrens' now well-founded fear that he was heading to trial

with counsel who had just informed him that he was not adequately prepared to present his defense. In his next available chance to personally address the court, Mr. Behrens rose midway through voir dire and conveyed his "belie[f] that [his attorney] [wa]s not prepared for this trial whatsoever." 4 R. 101. According to Mr. Behrens, that unpreparedness was palpable even before his attorney had admitted it: among other things, it was manifested in the fact that he had repeatedly urged Mr. Behrens to plead guilty, had forgot to bring his discovery files to their consultations on multiple occasions, and had failed to contact both his state attorney and certain witnesses that were "prominent to [his] innocence." Id. His attorney's unpreparedness, Mr. Behrens pleaded, "will be my downfall." Id. at 102.

When the district court gave Mr. Behrens' attorney a chance to respond to Mr. Behrens' concerns, his attorney's colloquy exasperated rather than mitigated those concerns, as the majority suggests. After responding that "there are things that I would like to do in this case that I, quite frankly, haven't done," he noted specifically that, "there are witnesses . . . that I haven't yet called or interviewed." 4 R. 103. He continued, "I will do the best I can for Mr. Behrens. But the . . . facts are that for the last two months I have been working on other matters. And I'm going to work for Mr. Behrens, but I can understand his concerns." Id. When pressed by the district court to explain "what you're trying to communicate in terms of the status of Mr. Behrens' case and his ability to go forward with a fair and adequate defense," id. at 104, counsel responded, "I am going to do my best to represent him zealously and aggressively and all of that" but reiterated that "I filed the motion [to continue] like Mr. Behrens allowed me

to do, and I have nothing else . . . unless the Court has any questions for me." Id. at 104-05.

The government was then given a chance to respond, and its characterization of the situation is also telling. Recognizing the distinction between trial strategy and preparation discussed above, the prosecutor began by suggesting that district court might be misperceiving Mr. Behrens' argument: "just because Mr. Behrens and [counsel] may have strategic differences, that's not a valid complaint. But when [counsel] makes a statement that there are witnesses he wishes he could have had time to speak to, that concerns me." 4 R. 105. She continued, "[w]hether they're called or not, I don't know if that makes a difference, even if Mr. Behrens disagrees. But certainly [counsel] should have an opportunity to speak to these people to make that determination." Id. at 105-06 (emphasis added). At that point, Mr. Behrens' attorney rose once more and acknowledged that, although he and Mr. Behrens had disagreed over certain strategic matters (including whether to call particular witnesses), they agreed that "there [wa]s one [witness] that I have not contacted that I will contact." Id. at 107. When the court inquired whether that witness "was identified today," counsel responded, "No, it was a witness who was identified off and on. The importance of the witness didn't really strike me until today. And I will contact that witness tonight." Id. at 108. He continued, "the witness that I am going to contact tonight could be an important witness based on my theory of the case, and I will be contacting him tonight." Id. at 109 (emphasis added).

After both sides were given the opportunity to weigh in, the district court characterized the issue as follows, "[i]t seems as though counsel's position is to contact

the one witness to see whether that witness is an important witness to the defense, and we may hear about that later, or we may not, depending upon what that contact discloses." 4 R. 109. Despite acknowledging that some pretrial investigation still needed to be conducted, the district court held, without further explanation, "that there's no good reason, other than perhaps a dispute between client and counsel over trial strategy matters, which are soundly invested in the counsel and not the client, as to why this matter should proceed." Id. at 110. At that point, Mr. Behrens' counsel moved to withdraw, and the district court denied that motion as well, asserting, "I'm not convinced that there is an attorney within our respected Wyoming State Bar that could do a better job of advocacy." Id. The next day, Behrens asserted his right to represent himself and explicitly tied that decision to his attorney's unpreparedness: "At this point I feel that due to the fact that we could not have an extension for my attorney to prepare . . . I need to at this point go ahead and represent himself." Id. at 297.

***

In light of the on-the-record concerns that Mr. Behrens, his attorney, and even the government voiced about counsel's need to conduct additional pretrial investigation, I simply cannot agree with the majority that the record reflects that Mr. Behrens' attorney was prepared for trial. It is undisputed that counsel's preoccupation with another case prevented him from interviewing a potential defense witness. It is similarly undisputed that counsel failed even to contact that potentially important witness despite Mr. Behrens' repeated urgings to the contrary. And it is undisputed that counsel recognized that the potential witness could be crucial to, not just Mr. Behrens' theory of the case, but to his

Page **7** of **10**

own theory of the case.  It is undisputed, in other words, that Mr. Behrens' attorney was "insufficiently prepared" to represent Mr. Behrens at trial, and for that reason, Mr. Behrens had "good cause for his dissatisfaction" and "his waiver of counsel [c]ould not be voluntary."  See Sanchez, 858 F.2d 1467; accord Fisher v. Gibson, 282 F.3d 1283, 1291 (10th Cir. 2002) ("In order to make the adversarial process meaningful, counsel has a duty to investigate all reasonable lines of defense."); Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005) ("This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence.").[2]

While the majority states that the district court characterized Mr. Behrens' complaint as a mere disagreement over trial strategy, that overlooks the fact that the district court also found that Mr. Behrens' attorney still needed to "contact the one witness to see whether that witness [was] an important witness to the defense," see 4 R. 109.  Although the decision to call any given witness is a matter of trial strategy, reserved to the sound discretion of a defendant's attorney, "[t]he decision to interview a potential witness is not a decision related to trial strategy.  Rather, it is a decision related to

---

[2] The majority suggests that "the record reflects that counsel did have an opportunity to contact that one witness," Maj. Op., at 11 (emphasis in original), but to be clear, the record merely reflects that counsel assured the court that he intended to contact the witness.  See 4 R. 108.  We have no idea whether counsel in fact contacted, let alone had the time to interview, the witness because the district court never followed up on the matter at Mr. Behrens' Faretta hearing.  See 4 R. 297-308.   In any event, it is no answer to assert that counsel intended to contact that potentially important witness after the jury had been selected and the night before he was to present Mr. Behrens' defense.  See Fisher, 282 F.3d at 1296 ("Porter's decision not to undertake substantial pretrial investigation and instead to 'investigate' the case during the trial was not only uninformed, it was patently unreasonable." (emphasis in original)).

adequate preparation for trial." Chambers v. Armontrout, 907 F.2d 825, 828 (8th Cir. 1990) (emphasis added). Indeed, one would assume it is beyond peradventure that there is nothing strategic about an attorney's failure to contact a witness who his client has repeatedly urged him to contact and who he himself recognizes could be an important witness under his theory of the case.

It is alas important to note that it was the district court, and not defense counsel, who asserted that counsel's failure to interview the potentially exculpatory witness was a matter of trial strategy. For his part, counsel made clear that his failure to investigate was not the result of a deliberate choice, let alone a grand plan, but was merely a consequence of the fact "that for the last two months [he had] been working on other matters" and "[t]he importance of the witness didn't really strike [him] until [the morning of voir dire]." 4 R. 103, 108. As someone who sits by designation at the district court from time to time myself, I sympathize with the district court's desire to move her docket along, and "[t]he prompt disposition of criminal cases is to be commended and encouraged." Powell, 287 U.S. at 59. "But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice . . . ." Id. The district court may well have been correct that Mr. Behrens' attorney could or should have been prepared for trial, but the record makes clear that he was not actually prepared to properly represent Mr. Behrens at trial.

On this record, we must credit Mr. Behrens' belief that his only hope was to represent himself rather than to proceed with unconstitutionally prepared counsel. That

negates any suggestion that he voluntarily waived his right to court-appointed counsel.

I respectfully dissent.